272 N.J. Super. 414 (1994)
640 A.2d 314
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MANNY TARVER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 6, 1994.
Decided April 21, 1994.
*418 Before Judges SHEBELL, LONG and LANDAU.
Susan L. Reisner, Acting Public Defender, attorney for appellant (Katherine F. Graham, Designated Counsel, of counsel and on the brief).
Clifford J. Minor, Essex County Prosecutor, attorney for respondent (Maryann K. Lynch, of counsel and on the letter brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Defendant, Manny Tarver, on October 24, 1990, was indicted on the following charges: third degree possession of a controlled dangerous substance, namely cocaine, N.J.S.A. 2C:35-10a(1) (count one); third degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5b(3) (count two); third degree possession of a controlled dangerous substance, namely cocaine, with the intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7 (count three); and second degree employing a juvenile in a drug distribution scheme, N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-6 (count four). There were several pretrial motions, including the State's motion to dismiss count four, charging defendant with employing a person seventeen years of age or younger in a drug distribution scheme, which the judge dismissed. In September 1991, defendant was tried to a jury. The jury found defendant guilty on the three remaining counts.
*419 Defendant was sentenced on October 21, 1991. The judge merged counts one and two into count three, committed defendant to the custody of the Department of Corrections for five years, with a mandatory period of parole ineligibility of three years.
A motion for new trial was heard on November 4, 1991. Defendant asserted that the court's charge on whether the property were being used for school purposes was in error. Defendant further argued that there was insufficient evidence to sustain the conviction of possession of a controlled dangerous substance within 1,000 feet of a school zone. The judge denied defendant's motion.
Defendant appeals to this court asserting the following legal arguments in his brief on appeal:

POINT I: THE STATE PRODUCED INSUFFICIENT EVIDENCE FOR A JURY TO CONCLUDE THAT THE PURPORTED "SCHOOL PROPERTY" HEREIN WAS "USED FOR SCHOOL PURPOSES" WITHIN THE MEANING OF N.J.S.A. 2C:35-7.

POINT II: THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS CHARGE TO THE JURY AS TO THE REQUISITE LAW AND FACTS CONCERNING N.J.S.A. 2C:35-7, IN THAT IT EFFECTIVELY RELIEVED THE STATE OF ITS BURDEN OF PROOF ON THIS COUNT OF THE INDICTMENT.

POINT III: THE TRIAL JUDGE COMMITTED PLAIN ERROR IN PERMITTING THE POLICE OFFICER TO TESTIFY THAT HIS SUSPICIONS CONCERNING DEFENDANT'S ALLEGED GUILT WAS [SIC] THE RESULT OF INFORMATION HE RECEIVED WHICH CONSTITUTED DOUBLE HEARSAY CONTRARY TO EVIDENCE RULE 63 AND VIOLATED DEFENDANTS CONSTITUTIONAL RIGHT OF CONFRONTATION. (NOT RAISED BELOW).

POINT IV: DEFENDANT'S SENTENCE REFLECTING A MANDATORY PAROLE DISQUALIFIER IMPOSED PURSUANT TO N.J.S.A. 2C:35-12 MUST BE VACATED IN THE ABSENCE OF THE PROSECUTOR HAVING STATED ON THE RECORD HIS REASONS FOR NOT WAIVING THE MANDATORY MINIMUM TERM. (NOT RAISED BELOW).

POINT V: THIS COURT SHOULD EXERCISE ITS POWER OF ORIGINAL SENTENCING JURISDICTION, R. 2:10-5, AND SENTENCE DEFENDANT TO NO MORE THAN A PRESUMPTIVE FOUR YEAR TERM.
The facts adduced at trial are as follows. On December 28, 1989, at approximately 9 p.m., Officer Grabowski of the Newark Police Department received a telephone call at the West District headquarters from an unidentified individual that informed him of *420 drug activities at a certain location. The informant gave a description of two black males who were on the corner of Melrose and 18th Avenue selling narcotics. The informant also described the clothes that the two were wearing.
Grabowski responded to this area with Officer William Funk, a veteran of the Newark police force for seven years. They parked their unmarked vehicle on Melrose Avenue about one hundred feet from the corner of 18th Avenue. Officer Funk estimated that there were forty or fifty feet between where they were parked and the two individuals on the corner. No people were walking on Melrose Avenue. Lighting was from a Chinese restaurant on the corner, that was open and had outside lights.
The officers observed two individuals who matched the description given on the telephone. According to Funk, they were in his view for one half-hour. While still in their parked vehicle, the officers saw an unidentified male, wearing a beige parka, approach one of the individuals who was later identified as defendant, Manny Tarver. A conversation between defendant and the unidentified male took place, after which defendant "motioned" his companion, later arrested with defendant, to go across the street. After being directed by defendant, the companion ran across the street, reached under a parked green Datsun and retrieved a small black object. He took something out of the object and ran back to defendant.
At the time, Officer Funk could not identify what was in the black container. He testified that the companion was acting "furtive" and "secretive." Officer Funk's suspicion that this individual had gotten some drugs from under the Datsun was based on the following:
Well, by the description we were given of the two suspects on the corner, the corner which is a known narcotics lookout, the complaints from the citizens and the church on the corner, and from when he went under the back tire of the car that was parked for no apparent reason other than to retrieve something.
After retrieving the container, the companion handed the item to defendant, who, in turn, handed it to the unidentified male. *421 According to Officer Funk, he saw the unidentified male give what "appeared to be" money to defendant and his companion.
The officers then drove to where these three individuals were, at which time, defendant and his companion started to walk away. Officer Grabowski stopped defendant and his companion, while Funk went to the vehicle, where he had seen the companion go during the alleged drug transaction, and retrieved the black container. He opened it, and found "eight orange cap vials of suspected cocaine."
The defendant and his companion were placed under arrest and read their rights. The officers handcuffed the two and put them in the police vehicle. The officers then drove easterly on 18th Avenue, looking in store windows in a futile effort to apprehend the unidentified male who had allegedly purchased the drugs. Defendant and his companion were then transported to the West District headquarters. Defendant's companion was identified as Sean Abraham, a juvenile. Defendant had seventy-three dollars in his possession and Sean Abraham had twenty dollars.
At trial, Officer Funk identified a map of the area, entitled "Thousand Feet Drug Free Zone Map Newark, New Jersey," and marked the spot where defendant's alleged drug sale took place. The Officer testified that Essex County Vocational School or Irvington Tech was within 1,000 feet of the drug sale. However, on cross-examination of Officer Funk, the following was revealed:
DEFENSE COUNSEL: You don't know what occupied that building as of December 28th, 1989?
Isn't that correct?
OFFICER FUNK: According to the map?
DEFENSE COUNSEL: No, I'm asking you in accordance with your own personal knowledge?
OFFICER FUNK: No.
DEFENSE COUNSEL: Now, your report, does it not say, it describes it as a vocational school.
Look at your report, sir, the second page. It describes it as the Essex County Vocational School.
Now, you can't tell me one way or another as of December 28th, 1989 whether that building was in fact an adult vocational school. You don't know that.

*422 Do you know one way or the other?
OFFICER FUNK: No.
Officer Funk was the State's only witness and after his testimony the State rested its case. A hearing was then held, out of the presence of the jury, to determine the admissibility of certain evidence and to hear defendant's motions.
Defendant's first motion was for a dismissal of count three, regarding distribution of cocaine within 1,000 feet of a school zone. According to defendant, the basis for this motion was his understanding that as of December 28, 1989, Irvington Tech had been closed, and the school in question was an adult vocational school. Defendant argued that the State did not offer any proofs that the building in question was a school to which N.J.S.A. 2C:35-7 applied. (N.J.S.A. 2C:35-7 does not apply to pre-schools, day care centers, colleges, universities or proprietary adult vocational schools.) Defendant asserted there was insufficient evidence to permit a jury to render a verdict as to whether defendant had distributed cocaine within 1,000 feet of a school zone. Defendant also made a motion for acquittal as to the other two counts.
With regard to count three, distribution within 1,000 feet of a school zone, the judge found that the ordinance, together with the map, established that "the property was used for school purposes...." He further found that there was "no evidence at all that it was not used for school purposes." The judge acknowledged that Officer Funk had stated on cross-examination that he had no idea, at the time of the arrest, whether the school were closed or not. However, the judge concluded that there was enough evidence for a jury to find that the property was used as a school on December 28, 1989. The judge denied defendant's motion for acquittal with regard to all remaining counts.
Defendant did not elect to testify. His first witness was Andre Howard, a close friend of defendant for the past ten years. Howard had been in the area of 18th and Melrose Avenues on the evening of December 28, 1989. He claimed that sometime between 8:30 and 9:30 p.m., the police, in six or seven police cars, *423 raided some building on 18th Avenue. According to Howard, defendant was on 18th Avenue at this time, along with Marcus Hill and two others, the names of whom he was unsure. He also stated that Sean Abraham was there and "a lot of people" were out on the street.
Howard maintained that at approximately 9 p.m., the Irvington police left the scene and two Newark police officers arrived about fifteen or twenty minutes later. He identified one of these officers as Funk. He claimed the two, in plain clothes, drove up without identifying themselves as police, pulled out their guns, and instructed everyone to get on the police car. They then began to check everyone and put them in the police car. After some questioning, the officers let some of them go and put others including Howard in the car where he remained for approximately five minutes.
After he was let out of the car, Howard walked to McDonald's where he met up with Sean Abraham. Following his time at McDonald's, Howard and Abraham were walking on Melrose Avenue, when the same police car drove up and the officers jumped out and put him and Abraham in the back of the car. While in the car, Howard was not wearing handcuffs, but he noticed that Abraham was. At this time, Howard also noticed defendant and Marcus Hill walking across the street. One of the officers jumped out of the car and had some words with defendant. The officer allegedly hit defendant in the stomach and then put him in the police car.
Howard asserted that a little after 9:30 p.m., he was brought to the 17th Avenue Precinct. He was not informed why he had been arrested. At no time did Howard see drugs on defendant, nor did he see Abraham give anything to defendant. He also never saw defendant give anything to anybody else, nor did any black male wearing a beige parka approach defendant.
Defendant's next witness at trial was Marcus Hill, also a "close friend" of defendant. His testimony was in substantial agreement with that of Howard. Hill testified that he attended Irvington *424 Tech up to the middle of his senior year in 1989, when it closed down. He claimed Irvington Tech closed down in June 1989, at which time he was sent to Westside High School. According to Hill, the building was not being used for anything as of December 28, 1989, but did open up at some later date as an elementary school. Hill believed it was a year before it opened up as an elementary school.
Defendant's third witness was defendant's alleged companion, Sean Abraham, eighteen years old at trial, and a friend of defendant's for the past ten years. Abraham testified that he had put "a black medicine bottle" by the tire of a green Datsun. He claimed that defendant never assisted him with the contents of the bottle, nor did defendant have anything to do with it. According to Abraham, when he was arrested, he was brought by the officers to the 17th Avenue Precinct with defendant and Howard. He stated that the officers asked him about the black container, and he initially did not answer, but later admitted it was his. Abraham testified that no charges had been filed against him arising out of the incident on December 28, 1989.
During Officer Funk's testimony, he had denied that he and his partner had previously driven up to defendant and Sean Abraham. He claimed that he had never approached a bunch of youths, nor did he frisk a group of them on the evening of December 28, 1989. He further claimed that no one else was transported to police headquarters, except defendant and Sean Abraham.

I
Defendant alleges that the trial court committed reversible error in denying his motion for acquittal under R. 3:18-1 and his motions for a new trial pursuant to R. 3:20-1. These motions pertained to the issue of whether defendant was involved in drug distribution within 1,000 feet of a property used for school purposes. The trial court must deny a motion for acquittal if "viewing the State's evidence in its entirety, be that evidence direct or circumstantial," and giving the State the benefit of all favorable *425 inferences, "a reasonable jury could find guilt beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967). We apply this same standard in deciding if the trial court should have acquitted defendant. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964).
The trial judge responded to defendant's motion for acquittal on the charge as follows:
With respect to evidence adduced by the State, while it may not be as strong as it might be, certainly under the standard set forth in State v. Reyes, Officer Funk testified that the school in December of 1989 on the date of the arrest was a high school, it was a vocational high school. That's what he said. On cross-examination, granted, he said he had no idea whether the school was closed or not at that point, but that's just a matter of credibility.
What I'm saying, there certainly is evidence from which a jury can find that the property was in fact used for a school on December 28, 1989 within the purview of the statute. In addition, of course, the ordinance itself together with the map establishes that the property was used for school purposes, and other than the question posed on cross-examination there's no evidence at all that it was not used for school purposes.

So, I think we have enough to get to the jury on Counts One, Two and Three. The motion, therefore, is denied.
[Emphasis added.]
Defendant in count three was charged with violation of N.J.S.A. 2C:35-7. In relevant part, this statute provides:
Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree and shall ... be sentenced by the court to a term of imprisonment.
....
In a prosecution under this section, a map produced or reproduced by any municipal or county engineer for the purpose of depicting the location and boundaries of the area on or within 1,000 feet of any property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or a true copy of such a map, shall, upon proper authentication, be admissible and shall constitute prima facie evidence of the location and boundaries of those areas, provided that the governing body of the municipality or county has *426 adopted a resolution or ordinance approving the map as official finding and record of the location and boundaries of the area or areas on or within 1,000 feet of the school property. Any map approved pursuant to this section may be changed from time to time by the governing body of the municipality or county.
[N.J.S.A. 2C:35-7 (emphasis added).]
The elements of this statute can be simply stated as follows: 1) distribution of a controlled dangerous substance; and 2) while on or within 1,000 feet of school property used for elementary or secondary school purposes.
Defendant may not be convicted of an offense "except on proof beyond reasonable doubt of each element of that offense...." State v. Thomas, 132 N.J. 247, 253, 624 A.2d 975 (1993) (citing In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Corbitt, 74 N.J. 379, 405, 378 A.2d 235 (1977) (Pashman, J., dissenting), aff'd, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978)). The burden of establishing each element of the offense remains with the State. Thomas, supra, 132 N.J. at 253, 624 A.2d 975.
The statute states that the map and ordinance are prima facie evidence "of the location and boundaries" of the school property. N.J.S.A. 2C:35-7. It does not state that the map and ordinance are prima facie evidence that the property is "used for school purposes." Therefore, we must look to case law to determine what is prima facie evidence for satisfying the element "used for school purposes."
In Thomas, supra, our Supreme Court examined the question of whether the State produced sufficient evidence for a jury to conclude that the school property was used for school purposes. 132 N.J. at 251, 624 A.2d 975. There, Newark detectives arrested defendant for several offenses, including violation of N.J.S.A. 2C:35-7, distribution of cocaine within 1,000 feet of school property. Id. at 252, 624 A.2d 975. At trial, defense counsel stipulated to the admissibility of a drug free zone map, which the prosecution had entered into evidence. Ibid. The detective was also questioned about the map and he indicated defendant's vehicle was *427 within 1,000 feet of the school property, in this case, Madison Avenue School, at the time of the arrest. Ibid. Defendant denied his presence in the Toyota and that he possessed drugs, but did not address whether the Toyota was located within 1,000 feet of a school or whether that school were used for school purposes. Ibid. Defendant was convicted of the school-zone offense.
Our Supreme Court examined the legislative history of the statute and noted that, as originally enacted, the statute "offered no guidance regarding the type of proof that could be offered to establish that property was used for school purposes." Id. at 254, 624 A.2d 975. The Legislature amended that statute in 1988, and authorized municipalities and counties "to produce a map `for the purpose of depicting the location and boundaries of the area on or within 1,000 feet of any property used for school purposes which is owned by or leased to any elementary or secondary school or school board * * *.'" Ibid. (quoting L. 1988, c. 44; N.J.S.A. 2C:35-7). The Thomas Court also noted that the amendment provided that the map "`shall constitute prima facie evidence of the location and boundaries of [the 1,000-foot areas surrounding school property used for school purposes].'" Ibid. (quoting L. 1988, c. 44; N.J.S.A. 2C:35-7). In Thomas, the Court interpreted N.J.S.A. 2C:35-7 to require two factors to establish a prima facie case that property is being used for school purposes: "(1) the map must be properly authenticated; and (2) the municipality or county [must have] adopted a resolution or ordinance approving the map...." 132 N.J. at 254, 624 A.2d 975.
Thomas holds that if the State produces a map and an adopting ordinance, it is enough to establish a prima facie case that the drug distribution occurred within 1,000 feet of a school zone. Ibid. Nothing in Thomas changed the statutory requirement, and prior case law holdings, that the property at issue must be "used for school purposes." N.J.S.A. 2C:35-7; see also State v. Ivory, 124 N.J. 582, 592 A.2d 205 (1991).
In the present case, the detective was unable to be of any assistance as to the use of the school property. Therefore, *428 the only evidence for the State was the map and ordinance. Nonetheless, the State by virtue of the "map" provisions of N.J.S.A. 2C:35-7 made out a prima facie case as to the required element that the property be used for school purposes.
As noted, these provisions have been held to create a presumption which the prosecutor may invoke by, as it did in this case, producing a map adopted by ordinance pursuant to the statute's provisions. Thomas, supra, 132 N.J. at 254, 624 A.2d 975. This "presumption," however, is for constitutional reasons, no more than a "permissive inference." Id. at 255, 624 A.2d 975; see In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970). Therefore, the jurors must be instructed that they are free to "draw the conclusion [or to reject it], depending upon how they view the impact of the proof." Thomas, supra, 132 N.J. at 255, 624 A.2d 975 (citation omitted).
The facts in Thomas were quite different from the present case. As the Court noted:
[n]o evidence presented at trial suggested that the Madison Avenue School ceased to be operational, nor is the State obligated to disprove every contingency to sustain its burden. It need produce evidence sufficient for a jury to conclude beyond a reasonable doubt only that the Madison Avenue School was used for school purpose.
[Id. at 259-60, 624 A.2d 975.]
In Ivory, supra, the court stated that under N.J.S.A. 2C:35-7, it is necessary for the State to prove that the property at issue is school property and that it is used for school purposes. 124 N.J. at 587, 592 A.2d 205.
The Ivory Court noted that sometimes it is not readily evident whether certain property is "used for school purposes" and it offered some examples of how this could be proved:
In most cases, like that of a school itself, or playgrounds immediately adjacent to the school, use "for school purposes" will be self-evident. In other cases, the property may be marked by signs, flags, or banners indicating the school use. Recently, many municipalities have posted "Drug Free School Zone" signs at the edges of the safety zones. All of those would demonstrate actual use in cases in which supporting documents did not describe a then-current use.
Other situations involving less-immediately identifiable property uses may prove more ambiguous. In such cases, the courts could look to other evidence such as published schedules, newspaper accounts, photographs and the like to establish *429 that such property is regularly, consistently and actually "used for school purposes" and not merely owned by an educational entity. So long as there are indicia from which an objectively reasonable person could know that the school property was used regularly, consistently, and actually for school purposes, lack of knowledge by a drug dealer, or a stranger, or, for that matter, a resident that he or she is within 1,000 feet of school property is irrelevant. Under such circumstances prosecution of a defendant under this statute does not violate due process.
[Id. at 591-92, 592 A.2d 205.]
Evidence Rule 303, which was adopted effective July 1, 1983, is a new Evidence Rule which codifies the holding in Thomas with regard to presumptions against the accused in criminal cases. It prohibits the judge from directing the jury to find a presumed fact against the accused. However, "the judge may submit the question of the existence of the presumed fact to the jury upon proof of the basic fact but only if a reasonable juror on the evidence as a whole, including the evidence of the basic fact, could find the presumed fact beyond a reasonable doubt." Even where the presumed fact has a lesser effect than constituting proof of an element of the offense, the question of its existence may not be submitted to the jury if "the judge determines that reasonable jurors on the evidence as a whole could not find the existence of the presumed fact." Evid.R. 303.
In the present case, although the State produced a map and the ordinance that approved of the map, Officer Funk testified that he had "no idea" what school, if any, was occupying the building in question on December 28, 1989. He only knew that, "according to the map," it was Irvington Tech Vocational School. He had "no idea" if Irvington Tech had closed down after June 1988, as defense counsel suggested. We conclude, nonetheless, that this was sufficient evidence under Thomas for the State to withstand defendant's motion for acquittal on count three after the State's case.
However, when considering the viability of defendant's motion for acquittal on count three at the conclusion of the trial, it is necessary to consider the testimony of defense witness, Marcus Hill. Mr. Hill testified that he had been attending Irvington Tech until it closed down in June 1989. He claimed that halfway *430 through his senior year, he was sent to Westside High School because Irvington had closed. He stated that the building was not being used for anything on December 28, 1989, and that he believed it was a year later when it re-opened.
The State permitted Hill's testimony to go unrebutted. Ivory, supra, 124 N.J. at 587, 592 A.2d 205. Thomas, supra, supports this conclusion. 132 N.J. at 259, 624 A.2d 975. Ivory requires that the property be "regularly, consistently, and actually" used for school purposes. 124 N.J. at 592, 592 A.2d 205. Defendant may not be convicted of an offense "except on proof beyond reasonable doubt of each element of that offense...." State v. Thomas, 132 N.J. 247, 253, 624 A.2d 975 (1993) (citing In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Corbitt, 74 N.J. 379, 405, 378 A.2d 235 (1977) (Pashman, J., dissenting), aff'd, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978)). We fail to perceive how a jury could accurately determine, as constitutionally required, whether to accept or reject the statutorily granted "permissible inference" in these circumstances where the unrebutted sworn testimony indicates that the building ceased to be operational at the time of defendant's violation. See State v. Ingram, 98 N.J. 489, 498, 488 A.2d 545 (1985).
We have given full consideration to the State's argument that the legislative commentary to N.J.S.A. 2C:35-7 establishes that the statute applies even if a school is temporarily closed down. In pertinent part, this statute provides:
It does not matter in a prosecution under this section whether children were actually present or whether the school was in session at the time the offense occurred. Rather, this section is intended to create a permanent, 24-hour drug safety zone around schools, in recognition that children routinely congregate on school property and schoolyards before and after the normal school day, and during summer recess and other vacation periods.
[Cannel, New Jersey Criminal Code Annotated, comment 1 on N.J.S.A. 2C:35-7 (1993).]
However, in the present matter, the record reflects that the school may have been closed for over a year. Defendant's witness, Hill, testified that he was attending school at the building in question, but that it closed down and he was sent to Westside *431 High School. Hill believed it was a year before the building reopened. The offense appears to have occurred approximately one and one-half years after the map had been prepared. Officer Funk's report listed the property as "Essex County Vocational School," but Funk testified that he did not know whether this was actually an adult vocational school. If it were an adult vocational school, the statute would not apply. N.J.S.A. 2C:35-7.
On this record, given that there was unrebutted testimony that the school may have been closed for a year and was not being used for anything at the time of the offense, the judge's instruction to the jury that it did not matter "that the school may have been temporarily closed down," was in error. Considering the record as a whole, a judgment of acquittal should have been granted as it was the State's burden to prove every element of the offense, including that the property was being "used for school purposes." Here, a reasonable jury could not conclude beyond a reasonable doubt that the property was being use for school purposes on the date in question. Thomas, supra, 132 N.J. at 253, 624 A.2d 975. The proofs were required to be in such a posture that the jury could make an accurate and factual determination of the status of the property. Such a determination was not possible on these proofs. Accordingly, the court was required to grant a judgment of acquittal on count three.

II
For the first time on appeal, defendant raises an objection regarding the police officer's testimony relating to the information he received from an informant. If the alleged error has not been brought to the trial court's attention, we will not reverse on the ground of such error unless the appellant shows "plain error." R. 2:10-2. Plain error is an error that is "capable of producing an unjust result." Ibid. There must be a showing of a possibility "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
*432 "It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so `upon information received.'" State v. Bankston, 63 N.J. 263, 268, 307 A.2d 65 (1973) (quoting McCormick, Evidence (2d Ed. 1972), § 248, p. 587). "Such testimony has been held to be admissible to show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct." Bankston, supra, 63 N.J. at 268, 307 A.2d 65 (citations omitted).
In the present matter, Officer Funk testified on direct examination that he and his partner had "received information, we responded to an area where we received information about." He stated that they had gotten "a description of two black males who were on the corner who were selling narcotics." This testimony was not offered for the hearsay purpose of proving the truth of the assertion or that defendant was engaged in narcotics activity, but to explain what prompted the police to go to this area. See ibid.
Defense counsel elicited the same testimony from Officer Funk that defendant now claims is hearsay. This testimony on cross-examination was as follows:
Q: And did you  there was a call from a citizen in the area that there was a drug transaction that was going on?
A: No, the call was not that there was a drug transaction going on, the call was that there were people on the corner selling narcotics.
Q: All right. Did you get the call directly or did you just get the relay?
A: Officer Grabowski received the call.
....
Q: Well, right now I'm asking you do you have an independent recollection, sir, of what Police Officer Grabowski told you as to a description of the individuals that were involved in this, the drug selling?
A: It was two black males, I believe one was wearing a blue and gray coat, and I don't recall the other without looking at the report.
In any event, even if the admitted testimony were overly broad, we find no plain error. Officer Funk testified that he observed defendant and his companion for an entire half-hour period. An unidentified male approached defendant and then defendant motioned *433 to his companion to go across the street. The companion, who was acting "furtive" and "secretive," was observed retrieving a container from under the rear wheel. Thus, the informant's "tip" had little to do with proving defendant's guilt. The independent observations of the officer were the linch-pin of the State's proofs. It was only used to show why the officers were in this location.

III
Defendant argues that his five-year sentence, with a mandatory parole ineligibility period of three years, "must be vacated in the absence of the prosecutor having given reasons on the record for not acceding to defendant's request that he waive the mandatory minimum term." Citing State v. Vasquez, 129 N.J. 189, 196, 609 A.2d 29 (1992) and State v. Peters, 129 N.J. 210, 218, 609 A.2d 40 (1992), defendant also asserts that his sentence "must be redone so as not to compromise the constitutionality of N.J.S.A. 2C:35-12."
Our New Jersey Supreme Court has held that "[p]rosecutors are further required to state on the record the reasons for their decision to waive or not to waive the parole disqualifier, thereby allowing effective judicial review of the reasons." Peters, supra, 129 N.J. at 218, 609 A.2d 40; see also Vasquez, supra, 129 N.J. at 196, 609 A.2d 29. However, in the present matter, defendant was sentenced on October 21, 1991, and these cases were both decided in July 1992. There is no requirement that Peters and Vasquez be applied retroactively.

IV
Defendant contends that this court should exercise its original jurisdiction and sentence defendant to no more than the presumptive term of four years. In view of our remand and because defendant must be resentenced on counts one and two, we have considered defendant's contentions as raised in Point Five of his brief on appeal.
*434 A reviewing court must make sure that the trial judge followed the sentencing guidelines in the criminal code. It must (1) "require that an exercise of discretion be based on findings that are grounded in competent, reasonably credible evidence," (2) "require that the factfinder apply correct legal principles in exercising its discretion," and (3) modify sentences only when the application of the facts to law show "such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 363-64, 471 A.2d 370 (1984). A reviewing court must also determine that findings on aggravating and mitigating factors are based on the evidence, and decide whether application of the guidelines makes a particular sentence clearly unreasonable. Id. at 364-65, 471 A.2d 370.
The sentencing judge found the following as aggravating factors: 1) defendant "has a prior record of possession ... for which he was put on probation on December 1, 1989, and within a month committed the offense for which he is now being sentenced" N.J.S.A. 2C:44-1a(6); 2) "nature of the offense ... that he did in fact use a juvenile, although that charge was ultimately dropped by the State from the trial" N.J.S.A. 2C:44-1a(1); 3) defendant "is likely to continue committing offenses" N.J.S.A. 2C:44-1a(3); 4) defendant "is scheduled for trial ... next week on an assault charge that he was picked up on in May 1991" N.J.S.A. 2C:44-1a(6); 5) the "need to deter him and others from committing this kind of offense" N.J.S.A. 2C:44-1a(9); and 6) "an imposition of a fine or penalty would be perceived by him as the cost of doing business...." N.J.S.A. 2C:44-1a(11). The judge found no mitigating factors.
Defendant finds it "inconceivable" that the judge found no mitigating factors. Defendant claims that the following can be considered as mitigating:
(1) defendant's conduct did not cause serious harm, N.J.S.A. 2C:44-1b(1); (2) defendant did not contemplate that his conduct would cause or threaten serious harm, N.J.S.A. 2C:44-1a(2); the character and attitude of the defendant indicated that he would be unlikely to commit another offense, N.J.S.A. 2C:44-1b(9).
*435 We disagree. Distribution of cocaine can be readily perceived to constitute conduct which causes and threatens serious harm. There was also reason to believe, in view of defendant's history of drug involvement, that his violations of the law would continue.
The test is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review. Roth, supra, 95 N.J. at 364, 471 A.2d 370. We find the judge's weighing of the aggravating and mitigating factors to be reasonable.
Our holding regarding the insufficiency of the proofs on count three requires a remand for the vacating of that conviction. The defendant, therefore, must be resentenced on counts one and two.
Affirmed in part and reversed in part.