932 A.2d 773

**John N. SMITH**

v.

**STATE of Maryland.**

**No. 2720, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Sept. 13, 2007.

Piedad Gomez (Nancy S. Forster, on brief), for appellants.

Constantine P. Lizas (Douglas F. Gansler, on brief), Baltimore, for appellees.

Panel BARBERA, WOODWARD and LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

WOODWARD, J.

Appellant, John N. Smith, was tried before a jury in the Circuit Court for Somerset County and convicted of possession with intent to distribute cocaine, possession of cocaine, possession with intent to distribute cocaine within one thousand feet of a school, and wearing and carrying a concealed dangerous and deadly weapon. The court sentenced appellant to twelve years' incarceration for possession with intent to distribute cocaine, and suspended all but six years.[1] The court then imposed a consecutive three year sentence for possession with intent to distribute cocaine within one thousand feet of a school, and another consecutive three years for wearing and carrying a concealed dangerous and deadly weapon. In his appeal to this Court, appellant presents one question for our review:

Was the evidence legally insufficient to support the conviction for possession with intent to distribute a controlled dangerous substance in a school zone?

For the reasons set forth herein, we conclude that the evidence was insufficient to support appellant's conviction for possession with intent to distribute cocaine within one thousand feet of a school. Accordingly, we shall reverse that conviction.

## BACKGROUND

Because appellant challenges only his conviction for possession with intent to distribute cocaine within one thousand feet of a school, we shall discuss only those facts and proceedings relevant to that charge.

On July 19, 2005, at around 3:30 p.m., Somerset County Narcotics Task Force sheriffs executed a search warrant on an apartment in the Somers Cove apartment complex, located in the city of Crisfield. As part of the task force executing the warrant, Sergeant Mike Ward was assigned to cover the back of the apartment. Upon Sergeant Ward's approach, he saw a

---

1. The possession conviction was merged for sentencing purposes.

number of persons running out of the back door of the apartment. Eventually, Sergeant Ward apprehended appellant. Appellant's shorts were searched by Corporal Daniel Barnett, another member of the task force, whereupon Corporal Barnett discovered suspected, and later confirmed, crack cocaine in appellant's right front pocket.

At trial Sergeant Ward testified that he had received a certification from the planning and zoning department of Somerset County of the area within one thousand feet of Woodson Middle School. The certification was in the form of a 2004 aerial map of the neighborhood, with the distance of one thousand feet from Woodson Middle School marked thereon. Sergeant Ward indicated on the map the location of appellant's arrest, which fell within the one thousand foot area of the school. On recross examination, Sergeant Ward admitted that Woodson Middle School was closed for renovations at the time of appellant's arrest and that he had "no idea" when the school was scheduled to reopen.

At the conclusion of the State's case, defense counsel moved for judgment of acquittal on the charge of possession with intent to distribute cocaine within one thousand feet of a school, which was denied.[2] Appellant then took the stand in his own defense. He testified that he had attended Woodson Middle School from sixth through eighth grade and was familiar with the school. Appellant described the school property at the time of the offense as "nothing more than a construction site." Defense counsel introduced into evidence photographs of the school and its surrounding property taken by appellant and his uncle one week after appellant's arrest. The photographs showed a high, chain-link fence surrounding the school building, a playground, and portions of the parking lot. Further, the photographs showed that the school's playing field was marked off by a bright orange fence and contained piles of construction debris. Appellant testified that at

---

2. Defense counsel also moved for judgment of acquittal on the charge of possession of cocaine with intent to distribute, which was also denied.

the time of trial, thirteen months after the date of the offense, Woodson Middle School was "still under construction." No rebuttal evidence was offered by the State.

At the conclusion of the trial, defense counsel renewed her motion for judgment of acquittal, which the court again denied. After the jury rendered its verdict, the court proceeded immediately to sentencing. Appellant timely noted his appeal on February 21, 2006.

Additional facts will be set forth as needed to facilitate our discussion of the issue presented in this appeal.

## DISCUSSION

## I

### Standard of Review

We have stated:

The standard of review for the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In an action tried before a jury, it is the jury's task, not the court's, to measure the weight of evidence and to judge the credibility of witnesses. In performing this role, the jury has the power to decide which testimony to accept and which to reject. In this regard, it may believe part of a particular witness's testimony, but disbelieve other parts of that witness's testimony. Moreover, it is the exclusive function of the jury to draw reasonable inferences from proven facts.

*Velez v. State,* 106 Md.App. 194, 201–202, 664 A.2d 387 (1995) (internal citations and quotations omitted). Further, as a reviewing court, "[w]e do not re-weigh the evidence, but 'we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt.'" *State v. Smith,* 374 Md.

527, 534, 823 A.2d 664 (2003) (quoting *White v. State,* 363 Md. 150, 162, 767 A.2d 855 (2001)).

## II

## Sufficiency of the Evidence

■ Appellant maintains that the evidence adduced at trial was legally insufficient to support his conviction for possession with intent to distribute cocaine within one thousand feet of a school, pursuant to Md.Code (2002), § 5–627 of the Criminal Law Article, because the "provisions in the statute clearly imply that it is directed only to facilities that are open for use and where one would expect young people to congregate[,] [and that] [a] fenced off construction site is not such a facility." Appellant argues that section 5–627 is derived from "New Jersey's school-zone statute" and thus relies heavily on the New Jersey Superior Court case of *State v. Tarver,* 272 N.J.Super. 414, 640 A.2d 314 (1994), as well as analogous federal case law.[3]

The State responds that the evidence was legally sufficient to support appellant's conviction because section 5–627 clearly applies to schools, like Woodson Middle School, that are closed for renovations, and thus distinguishes the facts of the instant

---

**3.** Appellant also contends that, even if section 5–627 is unclear as to whether a crime had been committed under the facts of the instant case, the rule of lenity requires such ambiguity be construed in favor of appellant. The State responds that this argument has not been preserved for appellate review. We disagree with the State. The record reflects that, in her motion for judgment of acquittal, defense counsel clearly raised the issue of whether appellant could be convicted of a violation of section 5–627, because Woodson Middle School was closed for renovations. Preservation for appellate review relates to the issue advanced by a party, not to every legal argument supporting a party's position on such issue. *State v. Greenstreet,* 162 Md.App. 418, 426, 875 A.2d 177 (2005), *rev'd on other grounds,* 392 Md. 652, 898 A.2d 961 (2006) ("The Court of Appeals has recognized the distinction between a new issue, as the term is used in Rule 8–131(a), and a new argument, and the Court has held that Rule 8–131(a) does not preclude the latter."). Nevertheless, in light of our decision in the case *sub judice,* we need not address appellant's rule of lenity argument.

case from those in *Tarver* and other federal cases cited by appellant.

Section 5–627 states, in pertinent part:

(a) *Prohibited.*—A person may not manufacture, distribute, dispense, or possess with intent to distribute a controlled dangerous substance in violation of § 5–602 of this subtitle or conspire to commit any of these crimes:

\* \* \*

(2) in, on, or within 1000 feet of real property owned by or leased to an elementary school, secondary school, or county board and used for elementary and secondary education.

(b) *Application of subsection (a).*—Subsection (a) of this section applies whether or not:

(1) school was in session at the time of the crime; or

(2) the real property was being used for purposes other than school purposes at the time of the crime.[4]

Section 5–627 is derived, without substantive change, from former Article 27, § 286D. *See* Md.Code (1957, 1992 Repl. Vol.), Article 27, § 286D.[5]

In *Dawson v. State*, 329 Md. 275, 278, 619 A.2d 111 (1993), the Court of Appeals considered whether section 286D violat-

---

**4.** Section 5–602 makes it a crime, *inter alia*, to possess a controlled dangerous substance with the intent to distribute it.

**5.** Section 286D provided, in pertinent part:

(a) A person who manufactures, distributes, dispenses or possesses with the intent to distribute a controlled dangerous substance in violation of § 286(a)(1) of this subheading, or who conspires to commit any of these offenses, is guilty of a felony if the offense occurred:

(1) In, on, or within 1,000 feet of any real property owned by or leased to any elementary school, secondary school, or school board, and used for elementary of secondary education ... regardless of whether:

(i) School was in session at the time of the offense; or

(ii) The real property was being used for other purposes besides school purposes at the time of the offense.

Section 286(a)(1) made it unlawful, *inter alia*, to possess a controlled dangerous substance with the intent to distribute it.

ed the due process provisions of the United States Constitution and the Maryland Declaration of Rights. As part of its analysis, the Court discussed the origin of section 286D and the purpose of the Maryland General Assembly in enacting that statute. *Id.* at 284–288, 619 A.2d 111. Specifically, the Court found that section 286D was "modeled after legislation enacted in New Jersey," namely, section 2C:35–7 of the New Jersey Statutes Annotated (1992). *Id.* at 285 n. 3, 619 A.2d 111. Further, the Court recognized that 21 U.S.C. § 845a (now 21 U.S.C. § 860) [6] was "the federal counterpart of § 286D." *Id.* at 287, 619 A.2d 111; *see also Velez,* 106 Md.App. at 209, 664 A.2d 387 ("Section 286D was derived from a New Jersey statute, N.J.Stat.Ann. § 2C:35–7, which itself was modeled after the federal 'school yard' statute, then 21 U.S.C. § 845a and now recodified at 21 U.S.C. § 860.").

The *Dawson* Court determined that the purpose underlying section 286D "is the General Assembly's desire to protect school-age children." 329 Md. at 284, 619 A.2d 111. In particular, by enacting section 286D, the General Assembly intended (1) to "halt the proliferation of drug use among school-age children" by creating a "drug-free zone around school property," and (2) to "shield children from the direct and indirect effects of drug trading, including observing drug sales and the commission of violent crimes which may accompany drug trading." *Id.* at 285, 619 A.2d 111. The Court concluded: "To accomplish these two goals, the General Assembly sought to eliminate all drug dealing near school grounds on a 24–hour basis." *Id.*

---

**6.** The Court noted that 21 U.S.C. 845a had been recodified at 21 U.S.C. § 860. *Dawson,* 329 Md. at 287 n. 4, 619 A.2d 111. Section 860(a) makes it unlawful to, *inter alia,* possess a controlled substance with the intent to distribute it

within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility[.]

The appellant in *Dawson* argued that section 286D was "too broad" because "it applie[d] to those times when school [wa]s closed and children [we]re unlikely to be present," and thus did not "substantially further the State's objective of safeguarding children." *Id.* at 286, 619 A.2d 111. The Court disagreed, observing that "[t]his argument ignores both the characteristics of school grounds and drug marketplaces, as well as the prophylactic nature of § 286D." *Id.* The Court explained:

The hours that children frequent the areas surrounding school grounds are not limited to those in which the school is open for classroom instruction. **School grounds serve as a location for a variety of school-sponsored extracurricular activities as well as community-sponsored sports and social activities involving children which may take place during evening and weekend hours.**

**The very nature of the drug trade could warrant a 24-hour prohibition of drug sales within the vicinity of school grounds. The General Assembly chose not just to regulate the business hours of drug marketplaces near school facilities, but to deter their establishment entirely.** Once an area is known as a drug market, it may draw prospective drug purchasers or sellers throughout the course of the day. In addition, discarded drug packaging, paraphernalia, or litter from drug sales may remain in an area heavily trafficked by curious children. A reasonable way for the General Assembly to limit the potential exposure of children to such activities was to convince those engaged in the drug market that the risks associated with conducting business in school areas, regardless of the hour, greatly outweighed their potential profits. **If the drug market was removed from the area surrounding school property, it could logically follow that the likelihood of children having exposure to drugs would also decrease.**

Contrary to [the appellant]'s contention, the constitutionality of applying § 286D is not undermined simply because no children were present or because the transaction occurred at a time when school was closed. **The General**

Assembly established the "drug-free zones" as a prophy-
lactic device aimed at protecting children on or near
school property. We find that the application of § 286D
to all transactions within the 1,000 foot perimeter, re-
gardless of the presence of children, is substantially
related to this goal. Considering the likelihood that chil-
dren may be present in areas surrounding school grounds
and the dangerous and unpredictable nature of drug market
areas, the General Assembly's establishment of a 24–hour
"drug-free school zone" bore a rational relationship to the
achievement of the State's legitimate goal of protecting
children. The constraints of due process "do not require
that the means chosen by [the legislature] to deal with a
problem score a notable success in every application of the
statute."

*Id.* at 286–87, 619 A.2d 111 (emphasis added) (second altera-
tion in original) (quoting *United States v. Agilar,* 779 F.2d 123,
125 (2d Cir.1985)).

Although the Court of Appeals in *Dawson* articulated the
purpose underlying section 286D and determined its constitu-
tionality, the Court did not address the issue raised in the case
*sub judice,* namely, whether section 5–627 applies when a
school is temporarily closed for renovations. Nor has any
Maryland appellate court done so. For a resolution of this
issue, we must look to the New Jersey and federal cases that
have interpreted the statutes from which section 5–627 is
derived.

In *United States v. Hawkins,* 104 F.3d 437, 439 (D.C.Cir.
1997), Hawkins asserted that there was insufficient evidence
to support his conviction for violation of 21 U.S.C. § 860,
"because the Government failed to establish that his conduct
occurred within 1,000 feet of an operating school." Specifical-
ly, Hawkins claimed that "the Government must show that he
possessed or distributed heroin within 1,000 feet of an actual
school, not just a school building that is no longer (or not yet)
in use as a school." *Id.* at 440. The United States Court of
Appeals for the District of Columbia Circuit agreed, stating:

The Congress is understandably concerned with drug dealing where it might attract children, not with its effect upon abandoned or unfinished school buildings. Reading the statute as a whole, therefore, **we conclude that the Congress intended to subject drug dealers to enhanced punishment only for conduct occurring within 1,000 feet of an operating school** (or other listed facility).

*Id.* at 440–41 (emphasis added).[7]

In *Tarver*, 640 A.2d at 320, 322, the Superior Court of New Jersey, Appellate Division, was confronted with the question of whether there was sufficient evidence to support the appellant's conviction for violation of section 2C:35–7 when the school was temporarily closed down. At trial, the State's only witness was Newark Police Officer William Funk, who testified, based on a map of the area, that "Essex County Vocational School or Irvington Tech was within 1,000 feet of the drug sale" in which the appellant was involved. *Id.* at 317. On cross-examination, Officer Funk admitted that he did not personally know "what occupied that building as of December 28, 1989," the date of the appellant's arrest. *Id.* at 318.

In his defense, the appellant called Marcus Hill, who testified that he had attended Irvington Tech "up until the middle of his senior year in 1989, when it closed down," and further claimed that Irvington Tech had been closed since June 1989. *Id.* at 319. Hill also testified that the school was not in use "for anything" as of December 28, 1989, but did open up around a year later as an elementary school. *Id.* The State did not rebut Hill's testimony. The trial court denied the appellant's motion for judgment of acquittal, stating that there was " 'certainly [ ] evidence from which a jury can find that the property was in fact used for a school on December 28, 1989 within the purview of the statute.' " *Id.* (emphasis omitted).

---

7. Nevertheless, the Court found that the evidence was sufficient to convict Hawkins, because a reasonable juror could view the testimony of the presence of a school within 1,000 feet of the location of the drug offenses to "refer to an operating school." *Hawkins,* 104 F.3d at 441.

On appeal, the Superior Court of New Jersey, Appellate Division, stated that the critical language of the statute was that the school property within one thousand feet of where the appellant was arrested must have been "used for school purposes." *Id.* at 320. Citing *State v. Ivory*, 124 N.J. 582, 592 A.2d 205 (1991), the *Tarver* Court said that the State had to prove that the property at issue was "used for school purposes," and that such proof existed when "there are indicia from which an objectively reasonable person could know that the school property was used regularly, consistently, and actually for school purposes." 640 A.2d at 321.

Applying this principle to the facts, the *Tarver* Court concluded:

On this record, given that there was unrebutted testimony that the school may have been closed for a year and was not being used for anything at the time of the offense, the judge's instruction to the jury that it did not matter "that the school may have been temporarily closed down," was in error. Considering the record as a whole, a judgment of acquittal should have been granted as it was the State's burden to prove every element of the offense, including that the property was being "used for school purposes." Here, a reasonable jury could not conclude beyond a reasonable doubt that the property was being use[d] for school purposes on the date in question.

*Id.* at 323.

Under the teachings of *Hawkins* and *Tarver*, the use of property for school purposes can be proven by adducing evidence that the building on the property was actually being operated as a school at the time of the offense. The evidence is insufficient if the building is not yet or no longer in use as a school, or is temporarily closed down. *See Hawkins*, 104 F.3d at 440; *Tarver*, 640 A.2d at 323. Similarly, section 5–627(a) provides, by its express language, that its prohibitions apply only to real property "used for elementary or secondary education." Consequently, evidence of a building being operated as a school will satisfy this "use" requirement, while an

incomplete or closed school building will not,[8] subject to the important qualification hereinafter discussed.

■ *Hawkins* and *Tarver* focused on the use of the school building and did not discuss the fact that school property is composed of both a building or buildings and the surrounding grounds. The surrounding grounds usually contain sports fields, a track, outdoor basketball courts, and sometimes a playground. The language of section 5–627(a) does not limit its applicability to a *building* "used for elementary or secondary education;" rather it covers *real property* used for that purpose. Moreover, section 5–627(b)(2) provides that section 5–627(a) applies whether or not "the *real property* was being used for purposes other than school purposes at the time of the crime." (Emphasis added). Thus we must determine whether section 5–627(a) applies when, at the time of the crime, the school building is not being "used for elementary or secondary education," but the school grounds are being used by children. One federal court has addressed this issue and has held that the federal counterpart to section 5–627(a) *does* apply to such a factual setting.

In *United States v. Hohn*, 8 F.3d 1301, 1302 (1993), the appellant was convicted, under 21 U.S.C. § 845a, of the distribution of methamphetamine within one thousand feet of a public school and appealed the district court's denial of his motion to dismiss that charge. The appellant was arrested on June 20, 1990, in his home, which was "located within 177 feet of Central Park Elementary School (Central Park)." *Id.* Central Park's last day of classes for the 1989–90 school year was June 7, 1990. *Id.* The student body was to be relocated to another building for the 1990–91 school year because "the public school system planned to remodel and attach an addition to the present building." *Id.* On appeal, the appellant

---

8. We believe that this conclusion is consistent with section 5–627(b)(1), which provides that section 5–627(a) applies whether or not "school was in session at the time of the crime," because not being "in session" is part of the normal operation of a school. It has no relevance to a school that has closed, either temporarily or permanently.

maintained that Central Park was "not a public school at the time of the offense because it was not operational;" in other words, "because Central Park was closed for remodeling at the time of the arrest, [ ] it was not a school as a matter of law." *Id.* at 1307.

The United States Court of Appeals for the Eighth Circuit disagreed with the appellant and held that there was sufficient evidence for a jury to conclude that Central Park satisfied the statutory definition of a "school." *Id.* The court first noted that "[o]n June 20, 1990, the date of [the appellant's] arrest, *the public maintained access to the school grounds for recreational purposes." Id.* at 1302 (emphasis added). The court then stated:

> The magistrate judge found in an opinion adopted by the district court that as a preliminary matter there was sufficient evidence to find that Central Park was a school. The final determination as to whether Central Park met the statutory definition of school was determined by the magistrate judge to be a question of fact appropriate for the jury. We agree. The Omaha public school system continued to carry Central Park on its books as a school. **The children continued to use the school grounds.** A school need not be in session to trigger the schoolyard statute's penalties. The district court did not err when it denied Hohn's motion to dismiss Count I.

*Id.* at 1307 (emphasis added) (internal citation omitted).

■ It is clear from *Hohn* that the federal "school yard" statute is applicable when the building on the property at issue is not being operated as a school, but the school grounds continue to be used by children. This conclusion, in our view, is also consistent with the language and purpose of section 5–627. As previously stated, section 5–627(b)(2) expressly provides that the prohibitions of section 5–627(a) apply whether or not "the *real property* was being used for purposes other than school purposes at the time of the crime." (Emphasis added). Real property, by definition, includes the land upon which improvements, such as buildings, are constructed. *See*

Black's Law Dictionary 1218 (6th ed.1990) (defining real property, in part, as "[l]and, and generally whatever is erected or growing upon or affixed to land").

■ In addition, the purpose underlying the adoption of section 5–627 is clearly advanced by the statute's application when school grounds are being used by children. In *Dawson*, the Court of Appeals succinctly stated the purpose of section 5–627: "The General Assembly established the 'drug-free zones' as a prophylactic device aimed at protecting children on or near school property." 329 Md. at 287, 619 A.2d 111. The Court also observed that school grounds serve as a location for a variety of activities "involving children." *Id.* at 286, 619 A.2d 111. Thus the protection of children from the evils associated with a drug market on or near school property is necessary not only when a building is being used for educational purposes, but when the school grounds are being used by children. Therefore, we hold that section 5–627 applies when there is sufficient evidence from which a jury could reasonably conclude that at the time of the crime *either* the building on the property at issue was being operated as a school *or* the school grounds were being used by children.[9] Stated another way, section 5–627 is inapplicable, as a matter of law, only when the entire school property (building and grounds) is not being used for its intended purpose at the time of the alleged crime.

■ Applying this principle to the case *sub judice*, it is uncontroverted that the building that housed Woodson Middle School was closed for renovations and remained closed for over a year. Sergeant Ward, the State's sole witness, admitted on cross-examination that Woodson Middle School was closed for renovations and that he did not know when it was supposed to reopen. Appellant similarly testified that Wood-

---

**9.** We do not mean to suggest that the State must prove that the school grounds were actually being used by children at the precise time that the crime was committed. The evidence need only show that the school grounds were being used by children during a time period within which the offense occurred.

son Middle School was closed for renovations at the time of the offense and was still closed at the time of the trial, some thirteen months later. The photographs admitted into evidence show a tall, construction chain-link fence surrounding the school building, which had at least one side with a roof, but no wall, and the other sides with a roof and only partially constructed walls. Accordingly, the evidence was insufficient to show that the building on the school property was being operated as a school at the time of the crime committed by appellant.

The controversy between the parties revolves around whether the school grounds were being used by children. The State points to the testimony of Sergeant Ward, who stated that the school property was "partially fenced." The State argues further that "[t]he pictures introduced into evidence show that the sidewalks, bike racks, parking lots, and athletic fields were not part of the areas fenced in by the construction barrier and were still accessible by the public." [10] We disagree with the State.

All nine photographs admitted into evidence were taken during the day, when it was overcast but not raining, one week after appellant's arrest. Defendant's Exhibit # 8 shows a playground, with a set of swings and a slide, next to the partially constructed school building. A tall, construction chain-link fence surrounds the playground and building and appears to preclude any access thereto. Defendant's Exhibit # 7 shows that at least part of the athletic field adjacent to the school building was surrounded by orange construction fencing, with three separate piles of construction debris sitting on the field. The rest of the photographs reveal the same construction chain-link fence surrounding the remainder of the school building, as well as parts of the parking lot. The fence

---

10. At oral argument before this Court, the State contended that the aerial photograph of Woodson Middle School, admitted into evidence as State's Exhibit # 1, showed that the school grounds were accessible to the community. The aerial photograph, however, was taken in 2004, which was clearly prior to the commencement of the renovations to the school building.

shows no apparent access points. In none of the pictures, taken in the middle of summer, are there any people-children or adults. The bicycle rack and the athletic field are empty and the parking lot contains no vehicles. In sum, the photographs depict an inaccessible playground, an unusable athletic field, and no one utilizing any other part of the school grounds on a summer day.

At trial, appellant described the school property as "nothing more than a construction site." Sergeant Ward's only testimony regarding the school grounds was that they were "partially fenced." Finally, the State presented *no rebuttal evidence* to show that the school grounds were, in fact, being used by children at the time of the offense. Therefore, we conclude that the evidence adduced at appellant's trial was insufficient for a jury to reasonably conclude that the grounds of the Woodson Middle School were being used by children at the time of the offense for which appellant was convicted.

Accordingly, because the State failed to adduce sufficient evidence that at the time of the crime either Woodson Middle School was being operated as a school or the school grounds were being used by children, we hold that appellant cannot be convicted of a violation of section 5–627.

**JUDGMENT OF CONVICTION FOR POSSESSION WITH INTENT TO DISTRIBUTE COCAINE WITHIN ONE THOUSAND FEET OF A SCHOOL REVERSED. ALL OTHER JUDGMENTS AFFIRMED. COSTS TO BE PAID BY SOMERSET COUNTY.**