Accordingly, the summary judgment under review is affirmed.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. BARRY K. MILES, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 17, 1989—Decided February 21, 1989.

28

Before Judges J.H. COLEMAN and D'ANNUNZIO.

*John H. Stamler*, Union County Prosecutor, attorney for appellant (*Steven J. Kaflowitz*, Assistant Prosecutor, Of Counsel and on the letter brief).

*Alfred A. Slocum*, Public Defender, attorney for respondent (*Bernadette DeCastro*, Assistant Deputy Public Defender, Of Counsel and on the letter brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Pursuant to leave granted, the State appeals an order dismissing count four of Union County Indictment 1309-11. Count four charged defendant with unlawfully and knowingly maintaining or operating a "premises, place or facility used for the manufacture of Schedule I or Schedule II narcotic drugs...." Although the trial court was satisfied that the

evidence presented to the grand jury supported a finding that defendant purchased cocaine and heroin in bulk, diluted the substances with cutting agents and packaged them for sale in units of small quantities, it concluded that the applicable statute, *N.J.S.A.* 2C:35-4, does not include these activities within its purview. We now reverse.

The testimony before the grand jury, if believed, established that on August 11, 1987, the police responded to a report of a domestic dispute at 311 Magnolia Avenue in Elizabeth. When the police arrived, defendant's girlfriend showed various items of suspected dangerous substances and drug paraphernalia to the police. These included 35 tinfoil packets of cocaine with a total weight of 3.12 grams, two plastic bags containing cocaine with a total weight of 5.47 grams, seven vials of crack with a total weight of .487 grams, 26 glassine envelopes bearing the logo "over the top" and containing a total of 1.35 grams of heroin, five plastic bags containing a total of 5.2 grams of marijuana, a scale, cutting agents and $599 in cash.

Detective Ponto, who presented this evidence to the grand jury, also testified that defendant gave the police a statement in which he denied personal use of cocaine or heroin. Defendant specifically admitted having packaged the cocaine and told the police that he gives the packaged items to two people who worked for him selling the drugs on the street. With regard to the cocaine, in particular, he testified that he bought the cocaine in bulk in New York and repackaged it two lines to a foil. Defendant explained to the police that one gram would yield ten lines or five foil packages.

*N.J.S.A.* 2C:35-4 makes it a first degree offense for any person knowingly to maintain or operate any premises used for the manufacture of certain specified controlled dangerous substances, including heroin and cocaine. The term manufacture is defined in *N.J.S.A.* 2C:35-2:

'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled dangerous substance or controlled substance analog, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction in chemical synthesis, *and includes any packaging or repackaging of the substance* or labeling or relabeling of its container.... [Emphasis supplied]

The trial court concluded that manufacture as used in *N.J.S.A.* 2C:35–4 did not include the mere diluting of a bulk quantity of drugs and the repackaging of those drugs into smaller units. He reasoned that manufacture means a "process by which something is done creating something else." In reaching this conclusion, the court relied heavily on a document released by the Assembly Judiciary Committee titled "Discussion of Specific Provisions of the Comprehensive Drug Reform Act of 1986" (hereinafter commentary). The trial court correctly noted that the commentary, in discussing *N.J.S.A.* 2C:35–4, referred to CDS production facilities as "laboratories" which have proliferated throughout the state and which "often employ sophisticated technologies and trained chemists." The commentary also noted that the offense "is also designed to reach any person who aids, promotes, finances or otherwise participates in the maintenance or operations of such a laboratory."

Although such commentaries are helpful in construing ambiguous statutory language, they do not supersede the plain language of a statute. Moreover, the commentary's emphasis on proliferating drug laboratories and their employment of sophisticated technologists and chemists is not inconsistent with the statute's plain language. The statute does include such laboratories within its purview, but that coverage is not inconsistent with the inclusion of repackaging facilities.

In reaching its conclusion, the trial court ignored that part of the legislature's definition of manufacture which "includes any packaging or repackaging of the substance or labeling or relabeling of its container...." The statutory language is

clear on its face and, under the facts of this case, required no judicial construction. *State v. Butler*, 89 *N.J.* 220, 226 (1982); *Ideal Mat. Ins. Co. v. Royal Globe Ins. Co.*, 211 *N.J.Super.* 336, 339 (App.Div.1986). Defendant's conduct, as presented to the grand jury, violated *N.J.S.A.* 2C:35-4.

Reversed and remanded for further proceedings.