**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4210-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NADIR ROBERTS,

     Defendant-Appellant.

_____

> Submitted November 8, 2018 – Decided November 28, 2018
>
> Before Judges Alvarez and Mawla.
>
> On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 15-03-0506, 15-07-1602, and 15-09-2215.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).
>
> Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Nadir Roberts appeals from an April 10, 2017 judgment of conviction and sentence. We affirm in part, and reverse and remand in part defendant's possession of a controlled dangerous substance (CDS) with intent to distribute in a school zone convictions for further proceedings consistent with this opinion.

In March 2015, an Essex County grand jury charged defendant under Indictment No. 15-03-0506 (indictment one), with: first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4; three counts of third-degree possession of a CDS, N.J.S.A. 2C:35-10(a); three counts of third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3); four counts of third-degree possession of a CDS with intent to distribute in a school zone, N.J.S.A. 2C:35-7(a). Co-defendants Mark Carter, Sadiyyah Roberts, Wali Williams, Matthew Policarepio, and Desmond Whitlock were also charged with various counts on the indictment.

In July 2015, defendant and co-defendant Davon Jackson were charged by the grand jury under Indictment No. 15-07-1602 (indictment two), with: second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12-1(b)(2); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and

second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).

In September 2015, the grand jury charged defendant and co-defendants Antwan Parker and Abrams Clifton under Indictment No. 15-09-2215 (indictment three), with: third-degree conspiracy to commit drug crimes, N.J.S.A. 2C:5-2; three counts of third-degree possession of a CDS, N.J.S.A. 2C:35-10(a); two counts of third-degree possession of less than one-half ounce of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(3), and (b)(5); two counts of third-degree possession of a CDS with the intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7.

The charges from indictment one stemmed from events on the evening of November 10, 2014, when Newark police officers arrived to execute a search warrant at a residence located on North 11th Street. Detective David Martinez obtained the warrant and supervised a large police caravan comprised of several officers and police vehicles.

Detective Thomas Del Mauro was assigned to watch the rear of the residence during execution of the search warrant. As Del Mauro approached the residence he noticed several individuals on the porch, including defendant and Carter. Del Mauro went to the backyard of the residence, and saw Carter come

3

out the rear of the residence and run into an adjacent yard. Del Mauro, along with Detective Edward Santiago, pursued Carter, and eventually arrested him. They recovered a nine millimeter handgun and a black plastic bag containing thirty-one envelopes of heroin, twelve vials of cocaine, and eleven bags of marijuana Carter had attempted to discard during the pursuit.

Inside the residence, several individuals, including defendant, were arrested for possession of a CDS. Sergeant Thomas Roe patted down defendant and discovered a clear plastic bag containing ninety-eight glass vials of cocaine in his shorts and another plastic bag containing 239 envelopes of heroin in his waistband. Defendant told police the residence was his address.

Police discovered materials used to weigh, manufacture, and distribute drugs inside the residence. Specifically, police found: a ten gram sandwich-sized bag of marijuana, nine small green baggies of marijuana, several empty green baggies, two digital scales, a metal grinder, ninety-eight vials of cocaine, five boxes of empty glass vials, and three bags of blue plastic glass vial tops.

Defendant and Carter were tried on indictment one. The jury convicted defendant of all charges. On December 9, 2016, defendant pled guilty to the second-degree charge of unlawful possession of a weapon on indictment two, and the two third-degree charges of possession of CDS with intent to distribute

A-4210-16T2

in a school zone on indictment three. In exchange for his plea, the State agreed to seek a dismissal of all other charges on both indictments, and to have defendant sentenced to five years in prison with a two-and-a-half-year period of parole ineligibility on each count, all running concurrently with any sentence imposed on the convictions of indictment one.

Defendant filed a motion for a new trial and acquittal of the jury trial convictions. The sentencing judge denied the motion and sentenced defendant on those convictions. Following a merger, defendant was sentenced to twelve years with a six-year period of parole ineligibility on the first-degree maintaining or operating a CDS production facility charge. Defendant received concurrent sentences of five years, each with a three-year period of parole ineligibility, on the three school zone counts. Regarding the charges to which defendant had entered a guilty plea, he received a five-year sentence with a forty-two month period of parole ineligibility for the weapon possession count, and a five-year sentence with a two-and-a-half-year period of parole ineligibility for the two counts of CDS possession. This appeal followed.

Defendant raises the following arguments on appeal:

> POINT I - THE LAW REQUIRES DISMISSAL OF COUNT SIX, MAINTAINING A NARCOTICS FACILITY, BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

A-4210-16T2

POINT II - THE TRIAL COURT ERRONEOUSLY ADMITTED HIGHLY PREJUDICIAL HEARSAY EVIDENCE SHOWING THAT THE POLICE HAD A SEARCH WARRANT FOR THE PREMISES WHERE THE POLICE ALLEGED THAT THE DEFENDANT MAINTAINED A NARCOTICS FACILITY.

    A.    The Evidence was Immaterial and Unduly Prejudicial.

    B.    The Evidence that the Police had a Search Warrant Violated the Hearsay Rules and Defendant's Right to Confront Witnesses.

POINT III - THE DRUG ZONE CONVICTIONS MUST BE VACATED BECAUSE THE DRUG ZONE MAP IS NOT A SELF-AUTHENTICATING DOCUMENT, WHICH WAS THE CITED JUSTIFICATION FOR ITS ADMISSION.

POINT IV - THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY ERRONEOUS, DEFICIENT, AND PREJUDICIAL JURY INSTRUCTIONS. (Partially Raised Below).

    A.    The Trial Court Erroneously and Prejudicially Instructed Jurors on the Law of Maintaining a Narcotics Facility.

    B.    The Trial Court Omitted a Vital instruction on the Law of Oral Admissions to Police, Resulting in Substantial Prejudice. (Not Raised Below).

A-4210-16T2

C.   The Instructions Improperly Shifted the Burden of Proof. (Not Raised Below).

D.   The Trial Court Instructed Jurors They Could Find the Defendant Guilty Based on an Intent to Attempt Distribution without Instructing Them on the Law of Attempted Distribution. (Not Raised Below).

POINT V - THE SENTENCE IS EXCESSIVE BECAUSE THE TRIAL COURT IMPROPERLY BALANCED THE AGGRAVATING AND MITIGATING FACTORS.

I.

On a motion for an acquittal notwithstanding the verdict, the standard of review is

> "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find" beyond a reasonable doubt that the crime occurred within the State.
>
> [State v. Denofa, 187 N.J. 24, 44 (2006) (quoting State v. Reyes, 50 N.J. 454, 458-59 (1967)).]

"On such a motion the trial judge is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974). In reviewing the denial of a motion for judgment of acquittal, we

7

apply the same standard and independently review the evidence against the defendant.  <u>Reyes</u>, 50 N.J. at 459.

Defendant argues the sentencing judge should have granted the motion for acquittal regarding the guilty verdict for maintaining a narcotics facility because the jury's fact finding was against the weight of evidence presented by the State. Primarily relying on the dissent in <u>State v. Kittrell</u>, 145 N.J. 112, 135-43 (1996), defendant asserts the State's evidence was insufficient to "support a finding that the defendant maintained the premises on a continuing basis" because "[t]here must be continuity of use of the facility to qualify under the statute."  We disagree.

N.J.S.A. 2C:35-4 provides:

> [A]ny person who knowingly maintains or operates any premises, place or facility used for the manufacture of . . . any substance listed in Schedule I or II, or the analog of any such substance, or any person who knowingly aids, promotes, finances or otherwise participates in the maintenance or operations of such premises, place or facility, is guilty of a crime of the first degree[.]

"Manufacture" is defined in N.J.S.A. 2C:35-2 as:

> [T]he production, preparation, propagation, compounding, conversion, or processing of a [CDS] or controlled substance analog, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a

> combination of extraction and chemical synthesis, <u>and includes any packaging or repackaging of the substance</u> or labeling or relabeling of its container[.]
>
> [(emphasis added).]

In <u>Kittrell</u>, the Supreme Court interpreted the language of N.J.S.A. 2C:35-4 and N.J.S.A. 2C:35-2, specifically the definition of the word "maintain" in the former statute. 145 N.J. at 121-23. The Court concluded the Webster's Dictionary definition of maintain, "to preserve in[;] carry on[;] keep up[;] continue," reflected the legislative intent for its use of the term in the statute. <u>Id.</u> at 122 (quoting <u>Webster's Third New International Dictionary</u> 1362 (3d ed. 1976)).

The defendant in <u>Kittrell</u> was charged under N.J.S.A. 2C:35-4, when police executed a search warrant at a co-defendant's apartment and discovered twenty-two vials of cocaine, sixteen small yellow plastic bags and fifty blue bags containing cocaine, and a bag of marijuana. <u>Id.</u> at 123. Kittrell's co-defendant admitted the drugs belonged to Kittrell, who used the co-defendant's apartment to "cut-up," package, and repackage cocaine. <u>Ibid.</u> Based on the evidence recovered and the co-defendant's statement, the Court held a reasonable inference could be drawn by a factfinder that Kittrell maintained the co-defendant's apartment as a narcotics packaging or repackaging facility

pursuant to N.J.S.A. 2C:35-4. Ibid.; see also State v. Miles, 231 N.J. Super. 27 (App. Div. 1989) (finding "[thirty-five] tinfoil packets of cocaine with a total weight of 3.12 grams, two plastic bags containing cocaine with a total weight of 5.47 grams, seven vials of crack with a total weight of .487 grams, [twenty-six] glassine envelopes bearing the logo 'over the top' and containing a total of 1.35 grams of heroin, five plastic bags containing a total of 5.2 grams of marijuana, a scale, cutting agents and $599 in cash" sufficient evidence to reverse an order dismissing a count charging a defendant under N.J.S.A. 2C:35-4).

The Court explained:

> [F]or Kittrell to be convicted under N.J.S.A. 2C:35–4, he must "maintain" a facility that "manufactures" a [CDS]. To establish such "maintenance" there must be some evidence of continuity in his use of [the] apartment to manufacture crack. Such evidence may be as here, that he used the apartment on more than one occasion as a manufacturing facility. We recognize that there may be a few cases where a person will be apprehended the first time that he operates a manufacturing facility. To sustain a conviction under those circumstances, there must be some evidence that the defendant intended to operate the manufacturing facility on more than one occasion.
>
> [Kittrell, 145 N.J. at 122 (emphasis added).]

Here, the evidence recovered by the police pursuant to the search warrant was sufficient for a reasonable juror to find defendant guilty of an offense under

N.J.S.A. 2C:35-4. The police recovered a greater amount of drugs than the defendants in either Kittrell or Miles. Furthermore, the State offered an expert witness who explained the evidence recovered at the residence, namely, the baggies, vials, grinders, and scales, were materials commonly used to cut-up, weigh, package, and distribute narcotics.

When the evidence of this case is viewed in a light favorable to the State, and construing N.J.S.A. 2C:35-4, a reasonable jury could find the intent of continuity required by Kittrell. 145 N.J. at 121. Even if this were the first time defendant had operated the residence as a narcotics facility, the abundance of drugs and paraphernalia could lead a reasonable juror to find defendant intended to continue using the residence as a location to package drugs for distribution on more than one occasion. For these reasons, we decline to disturb the jury's verdict finding defendant guilty of maintaining or operating a CDS production facility under N.J.S.A. 2C:35-4.

II.

We next address defendant's assertion the trial judge committed reversible error by permitting the prosecutor to reference the search warrant in his opening and during his questioning of Martinez. Generally, when error is not brought to the attention of the trial court, we will not reverse unless the appellant shows

the error was "clearly capable of producing an unjust result." R. 2:10-2. If the error was objected to, or otherwise brought to the attention of the trial court, the same standard ultimately applies notwithstanding the assertion it was "harmful error." See State v. Weston, 222 N.J. 277, 289 (2015). This is because reversible error must be clearly capable of producing an unjust result. State v. Castagna, 187 N.J. 293, 312 (2006) (internal citations and quotations omitted). If the error is harmless, it will be disregarded by the court. State v. Macon, 57 N.J. 325, 333 (1971).

The prospect of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Id. at 336. Even an error of constitutional dimension will not be considered harmful unless it contributed to the verdict. State v. Gillespie, 208 N.J. 59, 93-94 (2011); State v. Slobodian, 57 N.J. 18, 23 (1970). The burden is on the State to prove the error did not contribute to the verdict. State v. Cabbell, 207 N.J. 311, 338-39 (2011).

Defendant argues it was error for the trial judge to allow the prosecution's mention of the police having a search warrant for the premises because it was immaterial to the trial and prejudicial to defendant. Specifically, the prosecutor said the following in the opening statement:

Now, you are going to hear from several detectives with the Newark Police Department who were involved in this investigation. You're going to hear from . . . Martinez. He was the lead detective in this case and he's going to explain to you that he was conducting this investigation at . . . [the residence].

He will tell you that he went to a judge and he got a search warrant to be able to give him permission, him and other Newark police, permission to enter that [residence]. . . . That was [defendant's] apartment.

Now, you're going to hear that on November 10, 2014, Martinez and several other detectives from the Newark Police Department went to that location and executed that warrant.

Defense counsel requested a sidebar and moved for a mistrial after the prosecutor's mention of the search warrant. The prosecutor, relying upon State v. Cain, 224 N.J. 410 (2016), responded that one reference was permissible. The prosecutor also argued that the parties had addressed the issue in an earlier motion in limine, and that he had instructed the State's witnesses to "stay away" from the topic of search warrants. The trial judge denied defendant's motion. The next day, the judge expanded on her decision:

Yesterday at sidebar, I did indicate that the prosecutor would be allowed to make mention of the fact that there was a search warrant and that the search of the subject premises was pursuant to a search warrant. And today I am going to set limitations. [The prosecutor] indicated he would mention it in the opening. He would mention it in direct and summation, and this Court finds

13

that it is appropriate, and I'm going to ask the State to limit the question to the fact that the search of the premises was pursuant to a search warrant that was obtained on X date. I don't believe there's any need to go into the fact that it was issued by a Superior Court Judge, so I would ask that you stay away from that; and most certainly, I would explicitly instruct you to stay away from anything pertaining to the investigation that led up to the issuance of that search warrant. Okay? And that goes to all the parties.

The Supreme Court has stated:

A search warrant can be referenced to show that the police had lawful authority in carrying out a search to dispel any preconceived notion that the police acted arbitrarily. A prosecutor, however, may not repeatedly mention that a search warrant was issued by a judge if doing so creates the likelihood that a jury may draw an impermissible inference of guilt.

[Cain, 224 N.J. at 435.]

"Surely, the prosecutor should not in any way imply that because a Superior Court judge issued a warrant based on evidence supplied by law enforcement authorities, the same evidence presented at trial has received a judicial endorsement." Id. at 433-34.

In Cain, "the prosecutor mentioned the existence of a search warrant no less than fifteen times in the opening statement, summation, and during questioning of witnesses" and "those references specifically informed the jury that a Superior Court judge issued the warrant." Id. at 435. The Court noted

14

these references "went well beyond what was necessary to inform the jury that the officers were acting with lawful authority." Id. at 436.

In State v. Milton, 255 N.J. Super. 514 (App. Div. 1992), we encountered similar circumstances to the ones presented here. In Milton, the State argued "that the jury should be informed that the officers had proceeded to the house to execute valid search warrants to refute any suggestion that the officers had acted arbitrarily." Id. at 520. We stated "this alleged purpose in mentioning the presence of a search warrant could have been fully accomplished by the prosecutor's reference only to the existence of a search warrant for the premises that were invaded." Ibid. (citing State v. Bankston, 63 N.J. 263, 268 (1973)).

Here, there was no violation of the holdings in Cain and Milton. When the judge established the conditions and parameters of the State's ability to reference the search warrant, the prosecutor complied and limited his questioning about the search warrant to the facts necessary to establish the police had lawful authority to enter the residence. Furthermore, considering the overwhelming weight of the evidence seized by police from defendant's person and the residence, we do not find the isolated references to the existence of a search warrant prejudicial such that they were capable of an unjust result constituting reversible error. Because the reference to a search warrant

complied with Cain and Milton, we reject defendant's argument the mention of the search warrant was inadmissible on hearsay grounds.

III.

Defendant argues the school-zone offense convictions must be reversed and remanded because the State improperly authenticated the government map establishing the boundaries of school zones. The State concedes the map was improperly authenticated and the matter should be remanded. We agree.

In State v. Wilson, 227 N.J. 534 (2017), the defendant was charged pursuant to N.J.S.A. 2C:35-7.1(a), which states:

> Any person . . . distributing, dispensing or possessing with intent to distribute a [CDS] or controlled substance analog while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building is guilty of a crime of the second degree.

The statute also provides:

> In a prosecution under this section, a map produced or reproduced by any municipal or county engineer for the purpose of depicting the location and boundaries of the area on or within 500 feet of a public housing facility . . . , the area in or within 500 feet of a public park, or the area in or within 500 feet of a public building, or a true copy of such a map, shall, upon proper authentication, be admissible and shall constitute prima facie evidence of the location and boundaries of those areas, provided that the governing body of the municipality or county has adopted a resolution or

16

> ordinance approving the map as official finding and record of the location and boundaries of the area or areas on or within 500 feet of a public housing facility, a public park, or a public building.
>
> [N.J.S.A. 2C:35-7.1(e).]

"[The Supreme Court] held that such maps are not self-authenticating." State v. Dorn, 233 N.J. 81, 91-92 (2018) (citing Wilson, 227 N.J. at 553). Rather, the Wilson Court held the "[p]roper authentication of [such a] map required a witness who could testify to its authenticity and be cross-examined on the methodology of the map's creation and its margin of error." Wilson, 227 N.J. at 553 (citing State v. Simbara, 175 N.J. 37, 47-48 (2002)). The Court remanded for further proceedings consistent with its holding. Id. at 554.

Here, it is undisputed the trial judge erred when she admitted the government map on grounds it was self-authenticating. It is also undisputed defendant's counsel made a timely objection. For these reasons, pursuant to Wilson, we reverse and remand defendant's school-zone convictions.

IV.

Defendant's raises several claims regarding the jury instructions, which are unavailing. He argues the jury instructions failed to mention the State had to prove he used the residence on multiple occasions and had the intent to manufacture before the jury could convict him of the CDS facility charges.

17

Defendant contends the trial judge should have instructed the jury on how to assess the statements he made to police regarding his residence while in police custody. Defendant claims after jurors deadlocked, the court shifted the burden to him by instructing the jury it had to be convinced of defendant's innocence rather than his guilt. Defendant argues the judge instructed the jury it could convict defendant on attempted distribution without providing the jury the instruction regarding attempt.

"Correct jury charges are essential to a fair trial and failure to provide a clear and correct charge may constitute plain error." State v. Holden, 364 N.J. Super. 504, 514 (App. Div. 2003). Indeed, erroneous instructions on matters or issues that are material to the jury's decision are presumed to be reversible error. State v. Warren, 104 N.J. 571, 579 (1986). Moreover, if a jury instruction is particularly "crucial to the jury's deliberations on the guilt of a criminal defendant," then "'[e]rrors [having a direct impact] upon these sensitive areas of a criminal trial are poor candidates for rehabilitation' under a plain error theory." State v. Jordan, 147 N.J. 409, 422 (1997) (quoting State v. Simon, 79 N.J. 191, 206 (1979)).

"[O]ur case law requires the jury to find all the elements of an offense with specific reference to that offense." State v. Casilla, 362 N.J. Super. 554,

567 (App. Div. 2003). Accordingly, "[t]he trial court must give a clear explanation of the applicable law to provide the jury with an adequate understanding of the relevant legal principles." State v. Hackett, 166 N.J. 66, 85 (2001) (citing State v. Burgess, 154 N.J. 181 (1988)).

Here, the trial judge charged the jury regarding maintaining a CDS facility charge as follows:

> I have already stated cocaine and marijuana are dangerous substances prohibited by statute. Heroin is also a dangerous substance prohibited by statute. The statute read together with the indictment identifies the elements in which the State must prove beyond a reasonable doubt to establish [the maintaining CDS facility charge] of this indictment. They are as follows: Number 1, that the defendant . . . maintained or operated, aided or promoted, financed or otherwise participated in the maintenance or operation of a premises, place or facility. To maintain means to carry, to keep up, to continue.
>
> [Number 2][,] [i]n order for the State to prove that [] defendant . . . maintained the premise, place or facility there must be evidence of the continuity in the use of [the residence] to manufacture a [CDS], that is cocaine, heroin and marijuana, the premises, place or facility — that the premises, place or facility was used for the manufacture of cocaine, heroin or marijuana. Manufacture means the production, preparation, propagation, compounding, conversion or processing of a [CDS] or controlled substance analogue either directly or by extraction from substances of natural origin or independently by means of chemical synthesis, and includes any packaging or repackaging

19

of the substances or labeling or relabeling of its container. Number 3, that the defendant . . . acted knowingly. I have already defined knowingly for you.

If you find the State has proven each of these elements beyond a reasonable doubt, then you must find . . . [defendant] guilty of [the maintaining CDS facility charge] of the indictment. If you find that the State has failed to prove any of the elements beyond a reasonable doubt, then you must find the defendant . . . not guilty[.]

These instructions mirror the language of Kittrell and clearly set forth the elements of the charge. The instructions defined "maintain" and "manufacture" the same way the Kitrell Court interpreted the language of the relevant statutes. Moreover, defendant did not object to the instructions regarding the maintaining CDS facility charges. As we have stated, given the substantial evidence seized by police, the trial judge's instructions were neither prejudicial nor capable of an unjust result.

Defendant contends the trial judge's omission of a vital instruction on his oral admissions to police regarding his residence was prejudicial and contrary to State v. Hampton, 61 N.J. 250 (1972). We disagree.

In State v. Baldwin, 296 N.J. Super. 391, 398 (App. Div. 1997), we discussed the requirements of a charge pursuant to Hampton. We noted "Hampton requires a trial court to specifically instruct a jury to consider the credibility of a defendant's statement only if it was elicited in the 'physical and

20

psychological environment' of police interrogation." Ibid. "If, however, the defendant's statement is unnecessary to prove defendant's guilt because there is other evidence that clearly establishes guilt, or if the defendant has acknowledged the truth of his statement, the failure to give a Hampton charge would not be reversible error." Jordan, 147 N.J. at 425-26.

At the outset, we note defendant never sought such a charge during the trial. Regardless, the charge is inapplicable because defendant has not alleged any facts to demonstrate his statement was elicited within a physical and psychological environment of police interrogation, or was in any way involuntary. Moreover, defendant acknowledged the truth of his statement when he admitted his connection to the residence at trial by testifying the address of the residence was the same as on his driver's license. Additionally, there was substantial evidence presented at trial, which clearly established defendant's guilt, namely, the discovery of drugs packaged for distribution on his person and the materials to package and distribute drugs inside the house where defendant was located. For these reasons, the failure to give the jury a charge pursuant to Hampton was not reversible error.

Defendant also contends the instructions provided by the trial judge "shifted the burden of proof to the defendant." Specifically, he points to the

21

following passage from the trial judge's charge: "[I]n the course of your deliberations, do not hesitate to reexamine your [own] views and to change your opinion if convinced it is erroneous[.]"

Defendant's argument lacks merit. R. 2:11-3(e)(2). The language read by the judge was from the model charge on deliberations, not the burden of proof. See Model Jury Charges (Criminal), "Final Charge-Deliberations" (rev. May 12, 2014). Moreover, defendant did not object to the model charge. For these reasons, we decline to conclude the charge was prejudicial or erroneous.

Defendant argues the trial judge "improperly injected a theory of attempt into the case." Specifically, he points to the model jury charge read by the trial judge regarding CDS possession with intent to distribute. See Model Jury Charges (Criminal), "Possession of a Controlled Dangerous Substance with Intent to Distribute (N.J.S.A. 2C:35-5)" (rev. June 8, 2015).

In State v. Belliard, a defendant argued the trial court's failure to instruct the jury on the definition of "attempt" in an attempted robbery charge deprived him of a fair trial. 415 N.J. Super. 51, 64-66 (App. Div. 2010). We noted the "substantial step" element of attempt should have been explained in the jury charge. Id. at 73-74. We concluded "while the judge's failure to charge the jury

with attempt was in error, this error was not sufficient to lead the jury to a result it would not have otherwise reached." Id. at 74 (citing R. 2:10-2).

Here, again, defendant did not ask the judge to define attempt for the jury. Regardless, the jury did not need the definition of the term in order to decide whether defendant possessed drugs with the intent to distribute. As we noted, the quantity and nature of the package drugs removed from defendant's person, as well as the manufacturing and distribution paraphernalia seized inside the residence, would not confuse an average juror assessing whether defendant possessed CDS with intent to distribute.

V.

Finally, we reject defendant's challenges to the non-school-zone-related sentences. We review a "trial court's 'sentencing determination under a deferential [abuse of discretion] standard of review.'" State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)); see also State v. Pierce, 188 N.J. 155, 169-70 (2006). We affirm a sentence if: (1) the trial court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were based on competent, credible evidence in the record; and (3) the application of the law to the facts does not "shock[ ] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228

23

(2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). When reviewing a trial court's sentencing decision, we will not "substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)).

Defendant claims his sentence was excessive and should not have exceeded ten years. He argues the sentencing judge double counted his prior criminal record and conviction to find aggravating factor three. Defendant argues the judge should not have found a need to deter as an aggravating factor because he claims this factor has lost its value over time. Defendant asserts the judge should have found mitigating factors one and two because his conduct neither caused nor threatened serious harm, and defendant did not contemplate his conduct would cause or threaten serious harm.

The sentencing judge found aggravating factor three, the risk that defendant will reoffend. N.J.S.A. 2C:44-1(a)(3). This finding was evident from defendant's criminal history, specifically, defendant's thirteen arrests, seven of which were for CDS-related offenses. Defendant's criminal history also clearly supported the judge's finding of aggravating factor six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted. N.J.S.A. 2C:44-1(a)(6). The judge also found

aggravating factor nine, the need to deter defendant and others from violating the law, again relying on defendant's criminal history. N.J.S.A. 2C:44-1(a)(9). The sentencing judge did not find any mitigating factors.

Defendant did not raise any of the mitigating factors he now argues at sentencing. Also, defendant's conduct was serious enough that mitigating factors one and two do not apply to him. In State v. Tarver, 272 N.J. Super. 414 (App. Div. 1994), we addressed a similar argument. There, the defendant had been convicted of a CDS distribution charge and raised a similar argument regarding the mitigating factors. Id. at 414. We concluded: "[d]istribution of cocaine can be readily perceived to constitute conduct which causes and threatens serious harm. There was also reason to believe, in view of defendant's history of drug involvement, that his violations of the law would continue." Id. at 435.

Here, defendant's circumstances are no different than in Tarver. The sentencing judge followed the sentencing guidelines, and her findings regarding the applicability of the aggravating factors were supported by the record, namely, defendant's extensive criminal history. The sentence defendant received for the non-school zone related offenses neither shocks the judicial conscience nor constitutes an abuse of discretion.

Affirmed in part, and reversed and remanded in part as to defendant's conviction and sentence for four counts of third-degree possession of a CDS with intent to distribute in a school zone in indictment one. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION