*IN RE: X.R., X.R., K.D.* Consolidated Cases: Nos. 1051, 1052, and 1054, September Term 2021. Opinion by Wells, J.

**JUVENILE LAW – CHILDREN IN NEED OF ASSISTANCE – CUSTODY**

The standard of proof that a juvenile court is to employ at the dispositional stage of a "child in need of assistance" (CINA) proceeding is "a preponderance of the evidence." Contrary to what the mother of two child adjudicated CINA in these consolidated appeals argues, the standard of proof is not "clear and convincing evidence."

**JUVENILE LAW – CHILDREN IN NEED OF ASSISTANCE – CUSTODY**

This Court's previous statement that a court should employ a "more stringent standard" when denying a parent custody at the dispositional phase of a CINA proceeding did not announce a new standard of proof but referred to the quality of the evidence to adduced at disposition.

**JUVENILE LAW – CHILDREN IN NEED OF ASSISTANCE – CUSTODY**

A juvenile court's stated consideration of the factors outlined in Maryland Code Annotated, Family Law Article § 9-101 constrains a juvenile court's discretion at the dispositional phase of a CINA proceeding.

Circuit Court for Baltimore County
Case No. C-03-JV-21-000219

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

CONSOLIDATED CASES

Nos. 1051, 1052, and 1054

September Term, 2021

_____

IN RE: X.R., X.R., K.D.

_____

Shaw,
Wells,
Zic,

JJ.

_____

Opinion by Wells, J.

_____

Filed:  March 30, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Two of the Appellant's ("Mother") children, Child 1 and Child 3, while in her care, were sexual abused by their half-brother. Another of Mother's children, Child 2, witnessed the abuse of Child 1.[1] The Circuit Court for Baltimore County, sitting as a juvenile court, found Child 1 and Child 2 to be children in need of assistance ("CINA") and placed them with the Appellee ("the Department of Social Services" or "the Department"). While the court did not find Child 3 to be a CINA, it did remove Child 3 from Mother's custody and awarded custody to Child 3's father, who, the Department determined, was an appropriate person to entrust with Child 3's care.

Mother now appeals from that order and raises the following issues which we rephrase for clarity:[2]

---

[1] In the briefs, Child 1 and Child 2 are referred to as Xh.R. and Xn.R. respectively. For purposes of clarity, we simply refer to them as "Child 1" and "Child 2." For the same reason, we shall refer to K.D., who has a father different from the other children, as "Child 3."

[2] Mother's verbatim questions presented in this appeal read:

1. Did the juvenile court err in declaring Xh.R. and Xn.R. to be CINA when the Department failed to prove that Ms. T. was unable to care for the children?

2. Assuming without conceding that the juvenile court properly found Xh.R. and Xn.R. to be CINA, did the juvenile court err in denying Ms. T. custody of those two children at disposition?

   a. Does the clear and convincing evidence standard of proof apply to a dispositional removal order?

   b. Did insufficient evidence support the court's decision to remove the children from Ms. T.'s care at disposition?

1. Did the juvenile court err when it found Child 1 and Child 2 to be CINAs and awarded custody to the Department of Social Services?

2. Did the juvenile court err when it awarded custody of Child 3 to Child 3's father?

For the following reasons, we answer "no" to both questions and affirm.

**FACTUAL BACKGROUND**

**<u>Sexual Abuse Allegations and Violation of the Safety Plan</u>**

Mother is the biological mother of six children. The youngest are Child 1, Child 2, and Child 3, ages eight, ten, and six respectively. The father of Child 1 and Child 2 is deceased. Child 3 has a different father who resides in Columbia, Maryland with his sister and her two children.

In February 2021, the Department received a report detailing sexual abuse that Child 1 suffered at the hands of her 13-year-old half-brother, R.[3] The Department conducted a forensic interview in which Child 1 disclosed that R penetrated her vaginally and anally. Child 2 further disclosed seeing R with Child 1 and stated that R's pants were down. Child 3 was also forensically interviewed and described R touching her buttocks and vagina with his buttocks. Child 3 further described feeling pain when R sat on her and "used his stomach to press against her butt," which Child 3 described as feeling as if her "body was falling apart."

---

3. Did the juvenile court err in placing K.D. in the full custody of her father under CJP § 3-819(e) when mother remained able to care for the child and it was in K.D.'s best interests to remain with mother and her siblings?

[3] Because R is also a juvenile but not a CINA under consideration in this appeal, we randomly assign an alphabet to denote him, rather than call him "Child 4."

Mother subsequently agreed to a safety plan with the Department wherein she agreed not to allow any contact between R and the three children, and that R would reside with his maternal grandmother. On April 10, 2021, R was charged with second degree rape and assault. On the same day, Mother brought R back into the home allowing contact between R and the three children. On April 13, 2021, Mother took R to the hospital after R reported experiencing hallucinations.

On April 15, 2021, the Department removed all three children from the home and conducted interviews with them. In Child 1's interview she described being "scared that [R] had returned to the home, as she was worried that he would sexually abuse her again." Child 1 and Child 3 both denied being further sexually abused by R over the weekend. However, Child 1 did report feeling pain in her private parts since R had returned to the home. All three children were subsequently sheltered by the Department and placed in foster care. After being placed into foster care, Child 3's father was identified and after the Department determined him to a be a fit custodian, Child 3 was transferred to his care.

**CINA Proceedings**

On April 16, 2021, the Department filed CINA petitions and requested continued shelter care for the three children. After continuing the shelter care hearing, the juvenile court eventually ordered that the three children should remain in shelter with the Department. On May 20, 2021, the court granted the Department's request for a continuance of the adjudicatory hearing but granted Child 3's father's request to have Child 3 placed in his care pending adjudication.

A magistrate held a CINA adjudicatory hearing on May 27, 2021 and recommended that all three children be found to be CINAs and recommended continued placement in foster care and that Child 3's father be granted custody of Child 3. Mother subsequently filed exceptions to the magistrate's recommendations and requested a *de novo* hearing in front of a judge.

On August 30, 2021, the Department filed amended CINA petitions and a circuit court judge held a *de novo* hearing on the amended petitions. Between the time the children were removed from the home and the August 30, 2021 CINA proceedings, the staff at the children's school reported improvements in their school attendance and engagement. With respect to Child 1 and Child 2, the positive improvement was largely attributed to the structure provided by the foster parent. For Child 3, her counsel advised the court that Child 3 "seemed happy, she seemed at home, she seemed at ease, and she seemed to be thriving."

At the adjudication stage, the parties stipulated to the facts as described in the Department's petitions and the court found that the allegations had been proven by a preponderance of the evidence. At the dispositional stage, the juvenile court found Child 1 and Child 2 to be CINAs and committed them to the Department's custody with continued placement in foster care. Regarding Child 3, the juvenile court did not find her to be a CINA but did award custody of Child 3 to her father. Mother subsequently filed this timely appeal.

**STANDARD OF REVIEW**

When presented with a juvenile court's findings in CINA proceedings, an appellate court will apply "three distinct but interrelated standards of review." *In re J.R.*, 246 Md. App. 707, 730 (2020) (quoting *In re Adoption/Guardianship of H.W.*, 460 Md. 201, 214 (2018)).

> The juvenile court's factual findings are reviewed for clear error. Whether the juvenile court erred as a matter of law is determined "without deference;" if an error is found, we then assess whether the error was harmless or if further proceedings are required to correct the mistake in applying the relevant statute or regulation. Finally, we give deference to the juvenile court's ultimate decision in finding a child in need of assistance, and "a decision will be reversed for abuse of discretion only if 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.'"

*Id.* at 730–731 (citations omitted); *see also In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312 (1997) (describing an abuse of discretion as where "no reasonable person would take the view adopted by the [trial] court, or when the court acts without reference to any guiding rules or principles" (citations and quotation marks omitted)).

As to Mother's claims alleging error by the juvenile court in denying her custody of the three children, our standard of review is as follows:

> [W]e point out three distinct aspects of review in child custody disputes. When the appellate court scrutinizes factual findings, the clearly erroneous standard of Rules 886 and 1086 applies. [Secondly,] [i]f it appears that the chancellor erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court views the ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion.

*In re Yve S.*, 373 Md. 551, 586 (2003) (quoting *Davis v. Davis*, 290 Md. 119, 125–26 (1977) (latter two alterations in *In re Yve S.*)).

## DISCUSSION

Before getting to the merits of the appeal, in her Reply Brief Mother argues that the Department cannot rely on facts contained in the Department's August 27, 2021 amended CINA petition because the Department "never expressly proffered to the court the contents of its August 2021 report at the August 30, 2021 hearing, never stated to the court that it was submitting on information contained in that report and did not seek to move that report into evidence." Citing *Douglas v. First Sec. Fed. Sav. Bank, Inc.*, 101 Md. App. 170 (1994), Mother suggests that we are similarly barred from relying on the facts contained in the report because, as an appellate court, we have "no power to consider documents not considered by the trial court in reaching its decision . . . ." *Id.* at 177. This argument is unavailing because at the adjudication stage, all parties stipulated to paragraphs 1 through 12 of the Department's Amended Petition. The juvenile court then sustained the allegations agreed to by all parties and found them to be proven by a preponderance of the evidence. The court then relied on the sustained allegations at disposition for all three children.

Indeed, in Mother's initial brief to this Court, she acknowledges that "[o]n August 30, 2021, the parties settled the adjudication portion of the case by agreeing that, if the case had gone to trial, the Department would have been able to prove specific amended petition allegations, including: [bullet-point list of facts alleged in the amended petition]." So Mother's argument that as an appellate court, we cannot consider the Amended Petition

6

because it was not entered into evidence, misses the mark as we can review the evidence relied on by the juvenile court, which consisted of the stipulated allegations contained in the Amended Petition.[4]

I. **The Juvenile Court did not Err nor Abuse its Discretion When it Found Child 1 and Child 2 to be CINAs and Subsequently Placed them in the Custody of the Department.**

**A. Parties' Contentions**

Mother first argues that the juvenile court erred when it declared Child 1 and Child 2 to be CINAs because the court's findings "failed to establish that [Mother] was unable to care for them"—a required finding under the second prong of CINA. Mother contends that the violation of the safety plan represents a mere "isolated mistake," due to a "misunderstanding respecting the safety plan." In Mother's view, the Department failed to meet its burden of presenting sufficient evidence showing that Mother's child-endangering conduct will likely recur in light of the steps taken by Mother to ensure that R would have no further contact with the children.

---

[4] At oral argument, Mother's counsel referenced our decision in *In re M.H.*, 252 Md. App. 29 (2021). There, we held that in a contested CINA adjudicatory hearing, a CINA finding could not rest solely on the submission of an "Emergency Shelter Care Report" prepared by the local Department of Social Services and incorporated into the CINA petition, a practice that had long standing in that jurisdiction. *Id.* at 53. Mother's appellate counsel seemed to cite *M.H.* in support of the proposition that CINA cases should not be tried by stipulation. We are persuaded that the situation presented in *M.H.* is distinguishable from this appeal. Unlike *M.H.*, where *no* evidence was presented, the situation here is more akin to that found in *In re H.R.*, 238 Md. App. 374 (2018), where the hearing was uncontested and the parties stipulated to several reports. *Id.* at 382. In *H.R.*, we affirmed the CINA finding. *Id.* at 406–07. Here, Mother concedes that the parties stipulated to a list of specific findings that the Department could prove at adjudication. Consequently, she cannot claim error on appeal to an action she permitted at trial. *See, generally, Brown v. State*, 373 Md. 234, 238 (2003).

7

Mother further contends that even if the juvenile court properly found Child 1 and Child 2 to be CINAs, the court failed to establish that removing the children from her care at disposition was necessary. First, Mother argues that the proper standard of proof for denying custody at the dispositional stage is clear and convincing evidence. Mother grounds her argument in the fact that the dispositional stage requires a "more stringent standard of proof" than the adjudication stage, and that the only logical conclusion would be that the next more stringent burden of proof must be clear and convincing evidence. She next argues that the juvenile court failed to apply the requisite "more stringent standard," making "no mention of applying" a higher standard and merely stating that the children shall be committed to the custody of the Department. Finally, Mother asserts, the Department failed to prove by either the preponderance of the evidence or clear and convincing standard that it was necessary to remove Child 1 and Child 2 from her custody at disposition.

The Department counters by arguing that the juvenile court properly found Child 1 and Child 2 to be CINAs based on Mother bringing R—Child 1 and Child 3's abuser— back into the home. The Department contends that even if an additional assault did **not** occur when R returned to the home in April 2021, a court need not wait until the child suffers further harm to declare the child a CINA. *See In re Nathaniel A.*, 162 Md. App. 581, 596 (2005). The Department also challenges Mother's assertions minimizing the impact of R's presence in the home, noting that the victims had to spend "three days and nights in the home with him," Mother had not "made any arrangements for R to live elsewhere," and R only left the home because he was hospitalized after experiencing

8

hallucinations. Overall, Mother's deliberate violation of the safety plan, according to the Department, was not just an "isolated mistake."

Moreover, the Department argues that the juvenile court applied the proper standard of proof, first arguing that Mother did not preserve this argument before the juvenile court,[5] and second, maintaining that the only provision in the CINA statute that requires a higher burden of proof is the subsection on "waiver of reunification efforts." *See* Cts. & Jud. Proc. (CPJ) § 3-812(d). Furthermore, it would be "illogical[,]" according to the Department, to apply a higher standard at the disposition phase, where the rules of evidence are "relaxed[,]" than at the adjudication phase where the rules of evidence apply.

## B. Analysis

A "child in need of assistance," or CINA, means a child who requires court intervention because: "(1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) [t]he child's parents, guardian,

---

[5] The Department contends that "[a]lthough [Mother] argued that 'a custody matter is a more stringent finding', she never requested that the court apply a clear and convincing standard" and therefore the argument is not preserved on appeal. First, we note that it is within our discretion to address an unpreserved issue if we deem it "necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Md. Rule 8-131(a). But we need not exercise that discretion as Mother's counsel, at the August 30, 2021 hearing, adequately raised the issue of a "more stringent finding" being necessary when "separating a child from their parent." Mother's argument on appeal that the "more stringent" standard should be by clear and convincing evidence does not create a separate issue but merely proposes what that more stringent burden should be. *See Smith v. State*, 176 Md. App. 64, 70 n.3 (2007) ("Preservation for appellate review relates to the issue advanced by a party, not to every legal argument supporting a party's position on such issue.").

or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." CPJ § 3-801(f)(1)-(2).  The statute defines "neglect" as:

> [T]he leaving of a child unattended or other failure to give proper care and attention to a child by any parent or individual who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:
>
> > (1) That the child's health or welfare is harmed or placed at substantial risk of harm; or
> >
> > (2) That the child has suffered mental injury or been placed at substantial risk of mental injury.

*Id.* § 3-801(s).  The "principal focus" of the CINA statute is to "ensure that juvenile courts (and local departments of social services) exercise authority to protect and advance a child's best interests when court intervention is required." *In re J.R.*, 246 Md. App. 707, 751 (2020) (quoting *In re Najasha B.*, 409 Md. 20, 33 (2009)).

A CINA case is split into two phases: adjudication and disposition. CPJ §§ 3-817, 3-819.  At the adjudication stage, the juvenile court holds a hearing "to determine whether the allegations in the petition, other than the allegation that the child requires the court's intervention, are true." *Id.* § 3-801(c).  At this hearing, the Maryland rules of evidence apply, and the allegations must be proved by a "preponderance of the evidence." *Id.* § 3-817(b), (c).  At the adjudication stage, the court is not making a determination as to whether the child is a CINA, but merely determining whether the allegations in the CINA petition are true.

Following the adjudication hearing, the juvenile court must hold a separate "disposition hearing" to "determine whether the child is a CINA." *Id.* § 3-819(a)(1).  If the

10

court determines that the child is a CINA, the court can do one of two things. The court can either "[n]ot change the child's custody status[,]" or the court can "[c]ommit the child on terms the court considers appropriate to the custody of" a parent, a relative or other individual subject to § 3-819.2, or a "local department, the Maryland Department of Health, or both[.]" *Id.* § 3-819(b)(iii)(1)-(2). As will be discussed further, at all times, the court is bound by the constraints of Family Law (FL) § 9-101 which provides:

(a) In any custody or visitation proceeding, if the court has reasonable grounds to believe that a child has been abused or neglected by a party to the proceeding, the court shall determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to the party.

(b) Unless the court specifically finds that there is no likelihood of further child abuse or neglect by the party, the court shall deny custody or visitation rights to that party, except that the court may approve a supervised visitation arrangement that assures the safety and the physiological, psychological, and emotion well-being of the child.

### 1. In finding Child 1 and Child 2 to be CINAs, the juvenile court did not abuse its discretion because past neglect can be used to predict future ability to care for a child

Mother argues that while the first prong of CINA was met—that the children had been abused or neglected—the juvenile court failed to meet the second prong which requires the court to find that Mother "was unable to care for them."

In its ruling, the juvenile court stated:

> The Court finds that it has been proven to the Court that there has been a failure to care for the children by the mother and failing to protect them and that there was a reasonable and realistic chance of harm to the children by remaining in that abusive environment.

> The Court further finds, the Court has considered . . . Courts and Judicial Proceedings, Section 3-801, the Court finds that as for [Child 1] and for [Child 3], there has been abuse and that the mother has placed the children

11

in a position in which they were at a realistic and credible imminent harm by remaining in that environment and that [Child 2] also was not cared for in a way that, meaning that [they were also abused] by having to witness the sexual abuse of the minor sibling.

For those reasons, as for [Child 1] and [Child 2], the Court so finds . . . that the child's parents are unable or unwilling to give proper care and attention to the child and the child's needs.

Here the Court so finds the father is deceased and the mother, by violating [] the plan . . . the mother failed to protect the child and the children.

So, for those reasons, the Court so finds that [Child 1] and [Child 2] are children in need of assistance, and it is ordered that they are committed to the custody of the Baltimore County Department of Social Services pending further dispositional review before this Court.

Mother argues that the juvenile court failed to establish that she was unable to care for the children because, in Mother's view, "repeated acts of abuse and/or neglect over time" is a necessary finding. In support of this proposition, Mother cites two cases: *In re Priscilla B.*, 214 Md. App. 600 (2013) and *In re Nathaniel A.*, 160 Md. App. 581 (2005). Yet in those cases, and Mother essentially acknowledges as much, this Court did not constrain a CINA finding to only those instances where there was a pattern of abuse and/or neglect or where a guardian "fails to accept any responsibility for previous child-endangering conduct[,]" as Mother suggests. In her brief, Mother states that this Court, in *In re Priscilla B.*, 214 Md. App. 600 (2013), "acknowledg[ed] that an ongoing pattern of repeated neglectful conduct by a parent *may* establish that the parent will continue to fail to meet the child's needs." (Emphasis added). Of course, an ongoing pattern of repeated neglectful conduct is sufficient to substantiate a CINA finding, but Mother fails to cite to a case that holds it is necessary. The same logic holds true in *In re Nathaniel A.*, 160 Md.

12

App. 581 (2005), where we upheld the circuit court's CINA finding, because, in part, the appellant had "sought no help nor shown any change in her conditions that would lead us to believe" further abuse would not occur. *Id.* at 596–97.

Indeed, Maryland courts have cited past behavior as an indicator of the potential for further abuse or neglect. *See, e.g., id.* at 596 ("The judge need not wait until the child suffers some injury before determining that he is neglected. This would be contrary to the purpose of the CINA statute. The purpose of the act is to protect children—not to wait for their injury." (quoting *In re William B.*, 73 Md. App. 68, 77–78 (1987)); *In re Dustin T.*, 93 Md. App. 726, 732 (1992) (quoting the same); *In re Adriana T.*, 208 Md. App. 545, 570 (2012) ("It has long been established that a parent's past conduct is relevant to a consideration of the parent's future conduct.").

Because of the fact that the parties stipulated that Mother violated the safety plan, thereby neglecting Child 1 and Child 2 by exposing them to Child 1's abuser, and because a court may consider past neglect as an indicator of future ability to care for the child, we hold that the juvenile court did not abuse its discretion in finding Child 1 and Child 2 to be CINAs based on Mother's violation of the safety plan. Next, we address the juvenile court's custody arrangement.

### 2. Once a child is declared a CINA, a court is bound by the constraints of FL § 9-101 when deciding the proper custody arrangement

Mother next asserts that the denial of custody at the dispositional stage of a CINA proceeding must be made by clear and convincing evidence. Mother extrapolates the "clear and convincing" standard from a line of cases stretching back to 1983 that hold that a "more

13

stringent" standard is required in order to deny custody of a child. *See, e.g., In re Jertrude O.*, 56 Md. App. 83, 98 (1983), *cert. denied*, 298 Md. 309 (1984); *In re Joseph G.*, 94 Md. App. 343, 350 (1993) (holding that "a more stringent standard of proof is required to deny custody" than at the adjudication stage); *In re J.R.*, 246 Md. App. 707, 756 (2020) (reiterating this Court's holding in *In re Joseph G.* requiring a "more stringent standard" in order to deny custody). Notably, in none of these cases does the court specifically identify what the standard is, only that it must be "more stringent" than at the adjudication phase.

As far as we can discern, in *Jertrude O.* we stated that there was a "more stringent standard" because "one of the express purposes" of the CINA statute is to "conserve and strengthen the child's family ties and to separate a child from [the child's] parents only when necessary for [the child's] welfare[,]" 56 Md. App. at 98 (quoting CPJ § 3-802(a)(3) (as amended in 2001)), as well as the "emphasis upon retention of the family unit" underscored by the Supreme Court in *Stanley v. Illinois*, 405 U.S. 654, 651 (1972). Although *Jertrude O.* did not specify what the standard was, the use of a "more stringent standard" has nonetheless been affirmed in multiple opinions by this Court. *See, e.g., In re R.S.*, 242 Md. App. 338, 374 (2019) (citing the "more stringent standard of proof" in denying custody at disposition); *In re Damien F.*, 182 Md. App. 546, 568 (2008) (citing the same).

But we note that the CINA statute does not explicitly call for employment of a heightened standard to deny a parent custody at the dispositional stage. Therefore, we clarify that our prior use of the phrase "more stringent standard" does not connote a new standard of proof, as Mother argues, but refers to the quality of the evidence to be adduced

14

at CINA dispositions. *C.f., United Parcel Service, et al. v. Strothers*, ___ Md. App. ___ (2022) No. 743, September Term, 2020 Slip Op. at 11–12.

Mother argues that the standard to deny custody at the dispositional stage must be by "clear and convincing evidence" because it is the "next 'more stringent' standard of proof."[6] Further, in her reply brief and in response to the Department's contention that FL § 9-101 supersedes the *Jertrude O.* line of cases, Mother suggests that FL § 9-101 is inapplicable to CINA dispositional proceedings and cites, among other things, the lack of cross-references between the two statutes, the problematic burden-shifting from the Department to the parent, and the legislative history of FL § 9-101 purportedly limiting its application to "equity courts deciding private family law custody disputes" and not "juvenile courts handling CINA matters." We disagree with Mother's argument that FL § 9-101 is inapplicable in a CINA dispositional proceeding and we hold that once a child is declared a CINA, a juvenile court must only make a custody determination that abides by the requirements provided in FL § 9-101.

The Court of Appeals' explanation in *In re Yve S.*, 373 Md. 551 (2003) of the statutory framework is particularly helpful to our analysis. In *In re Yve S.*, the Court of Appeals reviewed a juvenile court's permanency plan for a child previously found to be a CINA. There, the Court stated:

> Where the child has been declared a "child in need of assistance"
> because of abuse or neglect, the trial court is further constrained by the

---

[6] "In Maryland, there are three recognized standards of proof to test the sufficiency of the evidence in differing contexts: (1) proof by preponderance of the evidence; (2) proof by clear and convincing evidence; and (3) proof beyond a reasonable doubt." *Coleman v. Anne Arundel Cnty. Police Dep't*, 369 Md. 108, 125 n.16 (2002).

15

requirements of § 9-101. This section directs the court to deny custody to the parent unless the court makes a specific finding that there is no likelihood of further abuse or neglect. The burden is on the parent previously having been found to have abused or neglected his or her child to adduce evidence and persuade the court to make the requisite finding under § 9-101(b).

*Id.* at 587 (citations omitted). Consequently, a juvenile court that has declared a child a CINA as a result of child abuse or neglect by the party must meet additional statutory requirements. *Id.* at 571. Because a CINA disposition hearing is a custody proceeding, the juvenile court is bound by FL § 9-101, which applies "in any custody or visitation proceeding" in which a court has reasonable grounds to believe a child has been abused or neglected. FL § 9-101(a). Once a child has been declared a CINA due to abuse or neglect, under FL § 9-101(b), the court must first "specifically find[] that there is no likelihood of further child abuse or neglect" before returning the child to the custody of the abusive or neglectful parent or guardian.

As a threshold matter, Mother's argument that FL § 9-101 is inapplicable in CINA disposition hearings holds no water. Family Law § 9-101(a) explicitly states that the statute applies "in any custody or visitation proceeding." It is straightforward that when a juvenile court determines the best custodial arrangement at the dispositional stage of a CINA proceeding, it constitutes a custody proceeding. *See Breslin v. Powell*, 421 Md. 266, 286–87 (2011) ("If the language of the statute is clear and unambiguous, courts will give effect to the plain meaning of the statute and no further sleuthing of statutory interpretation is needed."). Moreover, Maryland appellate courts routinely discuss the interplay of the two statutes and the role of FL § 9-101 in CINA dispositional proceedings. *See, e.g., In re Billy*

16

*W.*, 387 Md. 405, 447 (2005); *In re Yve S.*, 373 Md. at 587; *In re Caya B.*, 153 Md. App. 63, 76 (2003).

Mother's next argument is that FL § 9-101, if applicable to CINA disposition, would "problematically shift to the parent the burden of proving they are entitled to custody of their child *before* the Department has even met its burden to show that the child is a CINA." (Emphasis in original). Mother continues:

> [U]nder FL § 9-101, once a neglect finding is made, the burden shifts to the parent to present evidence showing they are entitled to custody of the child. However, in a CINA case, a finding of neglect does not even establish that the child is a CINA *unless* the Department also proves the parent is unable and unwilling to care for the child, per the two-prong definition of a CINA. This disconnect and problematic burden shifting away from the State (a government entity inserting itself into the protected family realm) under FL § 9-101 demonstrate that it has no place as part of a CINA disposition hearing.

(Emphasis in original) (citations omitted). Simply put, Mother submits that because FL § 9-101 is triggered as soon as a neglect finding is made (which shifts the burden to the parent to demonstrate why he or she is entitled to custody), it does not fit into a CINA dispositional proceeding—where the burden is on the Department—because CINA requires a finding of neglect *and* a finding that the parent is unwilling or unable "to give proper care and attention to the child and the child's needs[,]" CPJ § 3-801(f)(2), which is not required under FL § 9-101. While we think this is not a fair reading of the relationship between the statutes, we nonetheless think that Mother's argument is inapplicable because the juvenile court consulted FL § 9-101 only *after* finding the children to be CINAs.

Here, only after finding Child 1 and Child 2 to be CINAs did the juvenile court then move on to determine what custody arrangement best served the interests of Child 1 and

17

Child 2. The Department's burden was met once the juvenile court declared Child 1 and Child 2 CINAs, and Mother's burden began once the court went on to determine what custody arrangement was in the children's best interests. This is true even if the juvenile court did not explicitly state that the burdens had shifted. *See Marquis v. Marquis*, 175 Md. App. 734, 755 (2007) ("'Trial judges are presumed to know the law and to apply it properly.' Indeed, we presume judges know the law and apply it 'even in the absence of a verbal indication of having considered it.' A judge is not required to 'set out in intimate detail each and every step in his or her thought process.'" (citations omitted)).

Mother's final argument, that the legislative history of FL § 9-101 directs its application only to equity courts deciding family law custody disputes is directly refuted by a canon of statutory interpretation that Mother cites in her brief: "when a statute is silent as to a particular issue, it is appropriate for the Court to consider legislative history." *In re J.J.*, 456 Md. 428, 449 (2017) (quoting *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 77 (2004)). The purported "particular issue" here asks in what proceedings does FL § 9-101 apply. As we previously addressed, the statute explicitly states it is applicable in "*any* custody or visitation proceeding." FL § 9-101(a) (emphasis added). Because the statute is not silent as to its application, we need not dig into its legislative history.

When considering the higher standard required when terminating parental rights, it makes less sense for a juvenile court to require clear and convincing evidence before denying custody at the dispositional stage. Terminating parental rights (TPR)—an inherently more drastic and permanent action than denying custody—requires the State to rebut the presumption that "it is in the best interest of children to remain in the care and

18

custody of their parents" by clear and convincing evidence. *In re Adoption/Guardianship of Rashawn H.*, 402 Md. 477, 495, 499 (2007); *see also Santosky v. Kramer*, 455 U.S. 745 769 (1982) (announcing "clear and convincing evidence" as the proper standard of proof for terminating rights of the natural parents). Mother suggests that a dispositional custody order is a more permanent order than a shelter care order, which must be made by a preponderance of the evidence, and therefore, a more permanent placement must be made by a higher burden of a proof. At oral argument, Mother's appellate counsel argued that a custody award at disposition is merely a prelude to an inevitable TPR, further buttressing the need for a higher burden. We disagree.

A dispositional custody order, unlike a TPR, is temporary and modifiable. *See Shurupoff v. Vockroth*, 372 Md. 639, 656–57 (2003) ("We do not regard an order granting custody of a child to a third party, *subject to modification and with appropriate visitation privileges reserved to the parent*, as the equivalent of terminating parental rights . . . ." (Emphasis added)). In *Shurupoff*, the Court of Appeals addressed the different burdens required in a private custody dispute between a parent and a third party, and that of a TPR proceeding. *Id.* at 656. While the Court did identify the "power imbalance" inherent in a TPR proceeding between the State and a parent as evidencing the need for the higher burden, it placed an equal if not greater amount of weight on the modifiability and impermanence of a private custody dispute. *Id.* at 656–59. This case falls somewhere in between. While there certainly is the "power imbalance" between the Department and Mother, we think that the more consequential factor is the modifiability and impermanence of the dispositional custody award. In the present case, the juvenile court awarded custody

19

of Child 1 and Child 2 to the Department "pending further dispositional review[,]" thus emphasizing that the order was not a final one, and further, the court ordered supervised visitation between Mother and the children.

The CINA statute is permeated with provisions that underscore the impermanence of a dispositional custody award with the goal of trying to reunite the child with the parent. For example, CPJ § 3-802(a)(3) states that one of the purposes of the CINA statute is to "conserve and strengthen the child's family ties and to separate a child from the child's parent only when necessary for the child's welfare." Another example is CPJ § 3-812(d) which requires clear and convincing evidence that aggravating circumstances exist before a court can "waive the requirement that reasonable efforts be made to reunify the child with the child's parent or guardian." Additionally, CPJ § 3-816.1(b)(1) requires a court, in a dispositional hearing, to make a finding as to "whether the local department made reasonable efforts to prevent placement of the child into the local department's custody." And CPJ § 3-816.2(a)(2) provides for a review hearing every six months wherein the court must, "[p]roject a reasonable date by which the child may be returned to and safely maintained in the home or placed for adoption or under a legal guardianship." Finally, CPJ § 3-823(b) requires the court to hold a "permanency planning hearing to determine the permanency plan for a child[]" no later than 11 months after a child enters an out-of-home placement following a CINA disposition. Because of the inherent modifiability of a CINA dispositional order, it is clear to us that a CINA disposition is far from a prelude to an inevitable TPR. It would therefore be illogical to require clear and convincing evidence when denying custody at the dispositional stage of a CINA proceeding.

20

We think this approach is also in-line with our sister states. For example, Illinois' process is similar to Maryland's. As in Maryland, in Illinois, there are two stages to removing a child from a parent's custody due to the parent's abuse or neglect: adjudication and disposition. *In re Alexis H.*, 929 N.E.2d 552, 560–61 (Ill. App. Ct. 2010). At adjudication, the State has the burden of proving allegations of abuse, neglect, or dependence by a preponderance of the evidence. *In re Arthur H.*, 819 N.E.2d 734, 747 (Ill. 2004). Once the court finds that the minor has been abused, neglected, or dependent, the court moves to disposition, where it "determines whether it is consistent with the health, safety and best interests of the minor and public that the minor should be made a ward of the court." *In re Alexis H.*, 929 N.E.2d at 560–61 (citing 705 ILCS § 405/2-21(2)). While terminating parental rights due to parental unfitness requires proof of unfitness by clear and convincing evidence, *In re F.S.*, 749 N.E.2d 1033, 1035–36 (Ill. App. Ct. 2001), "[t]he standard of proof in a trial court's section 2-27[7] finding of unfitness *that does not result in a complete termination of all parent rights* is [the] preponderance of the evidence." *In re Stephen K.*, 867 N.E.2d 81, 98 (2007) (quoting *In re April C.*, 760 N.E.2d 101, 110 (2001)) (emphasis added) (second alteration in original).

Massachusetts' child protection statute provides for emergency 72-hour custody if there is reasonable cause to believe that a child is "suffering from serious abuse or neglect or is in immediate danger of serious abuse or neglect[]" and immediate removal is

---

[7] 705 ILCS § 405/2-27 outlines the options available for a court that has adjudged a minor a "ward of the court" due to parental unfitness or inability to care for the child. This section most closely resembles CPJ § 3-819(b) of the Maryland code.

21

necessary.  Mass. Gen. Laws c. 119, § 24.  Although only "reasonable cause" is required at the 72-hour stage, the local department's burden to "continue temporary custody" beyond 72 hours is by a "fair preponderance of the evidence." *Care & Protection of Walt*, 84 N.E.3d 803, 813 (Mass. 2017) (quoting *Care & Protection of Robert*, 556 N.E.2d 993, 1001 (Mass. 1990)).  Indeed, all *temporary* custody orders under §§ 24 and 25 of Massachusetts General Laws chapter 119 are governed by the "fair preponderance of evidence standard[.]" *In re Lillian*, 837 N.E.2d 269, 276 (Mass. 2005) (citing *Care and Protection of Manuel*, 703 N.E.2d 211, 216 (1998)).  Only once the local department seeks to terminate parental custody does the burden reach "clear and convincing evidence[.]" *Adoption of Carlos*, 596 N.E.2d 1383, 1388 (Mass. 1992).

During oral argument, Mother's counsel advised that while some states forgo a clear and convincing standard, in California, a court requires "clear and convincing evidence" to deny custody of a dependent child to a parent or guardian.  However, California's scheme is distinguishable from that of Maryland, Illinois, or Massachusetts, because California's child protection statute explicitly requires that, before taking physical custody from parents or guardians, the court must find by clear and convincing evidence the existence of an enumerated aggravating circumstance. Cal. Wel. & Inst. Code § 361(c). The statute further provides that a dependent child cannot be taken from the physical custody of the parents or guardians unless:

> the juvenile court finds *clear and convincing evidence* that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent, guardian, or Indian custodian to live with the child or otherwise exercise the parent's, guardian's, or Indian custodian's right to physical custody, and there are no reasonable

22

means by which the child's physical and emotional health can be protected without removing the child from the child's parent's, guardian's, or Indian custodian's physical custody.

*Id.* § 361(d) (emphasis added). California's legislature made an obvious choice to require a higher burden when denying custody to a parent or guardian at the dispositional stage, rather than at the TPR stage. *See In re Gladys L.*, 46 Cal. Rptr. 3d 434, 436 (Cal. Ct. App. 2006) (explaining why California's dependency system comports with due process because by the time parent rights are terminated, "the juvenile court *must* have made prior findings that the parent was unfit" (emphasis in original)). If Maryland's General Assembly wanted a higher burden of proof at the dispositional stage, it would have provided for one in the CINA statute.

To summarize, consistent with the Court of Appeals' decision in *In re Yve S.*, we hold that once a court has declared a child a CINA, the court is only constrained by FL § 9-101 in its custody determination. Specifically, the court must first "determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to the party." FL § 9-101(a). Then, before awarding custody to the party, the court must make a specific finding "that there is no likelihood of further child abuse or neglect by the party," otherwise the court "shall deny custody or visitation," but the court may approve some sort of supervised visitation that ensures the child's physiological, psychological, and emotion well-being. *Id.* § 9-101(b). Here, the juvenile court made exactly this inquiry and determined that Mother would pose a danger to Child 1 and Child 2 if either child were returned to her care at that time.

23

### 3. Considering the constraints of FL § 9-101, the juvenile court did not err in awarding custody of Child 1 and Child 2 to the Department

Mother argues that even under a preponderance of the evidence standard, the Department failed to prove that it was "necessary and proper" to remove Child 1 and Child 2 from Mother's custody. For many of the same reasons that we hold that the juvenile court did not abuse its discretion in finding Child 1 and Child 2 to be CINAs, we hold that the juvenile court did not err in denying custody to Mother.[8] Finding Child 1 and Child 2 to be CINAs required the juvenile court to find that Mother was "unable or unwilling to give proper care and attention to the child and the child's needs." CPJ § 3-801(f)(1). It thus cannot be said that the juvenile court erred by denying custody to Mother if it similarly did not err in finding the children to be CINAs. In denying custody to Mother, the juvenile court, in accordance with the requirements of FL § 9-101, committed the child "on terms the court considers appropriate." CPJ 3-819(b)(iii)(2). We see no error in the court's custody arrangements.

## II. The Juvenile Court Properly Awarded Custody of Child 3 to Child 3's Father.

### A. Parties' Contentions

Mother contends that the juvenile court erred in awarding custody of Child 3 to Child 3's father because she was "able to care for the child and it was in [Child 3]'s best interests to remain with her Mother." First, Mother asserts that while the juvenile court

---

[8] Similarly, Mother incorporates her arguments made in the section regarding the finding of CINA into this argument.

24

has discretion to, it is not *required* to transfer custody from the neglectful parent to the non-offending parent. Further, Mother argues that it was actually in Child 3's best interests to remain with her rather than being transferred to her father's custody. In support of her argument, Mother asserts that granting custody to Mother would "ensure the continued and strong bond between [Child 3] and her siblings, [Child 1] [a]nd [Child 2], by having all three children remain under the same roof."

The Department counters by arguing that the juvenile court acted within its discretion and in the best interests of Child 3 by awarding custody to her father. The Department asserts that it was in Child 3's best interests to be in her father's custody due to Mother's past neglectful conduct and the fact that Child 3's father has "responded appropriately to Child 3," by developing a relationship with Child 3 and ensuring that Child 3 began therapy.

### B. Analysis

In a CINA proceeding, if the allegations contained in the petition are sustained against only one of the child's parents, and another parent is available who is willing and able to care for the child, "the court may not find that the child is a child in need of assistance, but, before dismissing the case, the court may award custody to the other parent." CPJ § 3-819(e). Regarding Child 3, the juvenile court stated the following:

> The Court so finds, incorporating what I've already stated in reference to [Child 3] . . . that in part is contrary to the child's welfare and it's not possible to return the child to the home for the same reasons that existed for [Child 1 and Child 2].
>
> Further, the Court so finds that [Child 3] also made a disclosure that they were abused and that there was a violation of the safety plan signed by

25

mother on April 10th, 2021, and at which time there was further victimization of the child.[9]

> The Court affirmly (sic) finds that the mother has failed to provide safe care for [Child 3] and place, [Child 3], placing them in an abusive situation. The Court adopts the previous finding of reasonable efforts and the Child Protective Services investigation, the safety plan, other investigations and decision-making meetings conducted.

> Further, the Court finds in this case there was a home assessment completed. It is found further, in accordance with 9-101 of the Family Law Article, that there be no further likelihood that abuse or neglect would occur as follows, and the Court goes to disposition in this case.

> . . .

> That in accordance with the Courts and Judicial Proceedings, that the child is not found to be a child in need of assistance because there is a parent who is willing and able and capable of caring for the child. And it's in the child's best interest.

> The Court further finds that there have been sustained allegations against one parent only and finding that the other parent is available and able and willing to care for the child, custody is awarded to [Child 3's father].

> . . .

> Further, it is ordered that visitation between [Child 3] and the mother be arranged by the parties. And that visitation between [Child 3] and the other siblings, [Child 1] and [Child 2] be arranged by the parties and order there be no contact between [Child 3] and [R]

---

[9] The Department asserts that upon R's return to the home, there "was potentially another incident that took place of another alleged sexual assault that may have taken place[.]" Mother however asserts that neither Child 3 nor Child 1 disclosed further abuse upon J.T.'s return. It is unclear, when the juvenile court referred to "further victimization" during disposition, whether the court was implying there was further sexual assault or instead referring to the victimization of having to be under the same roof as one's abuser. As Child 1 reported, she was "scared" because "she was worried that [R] would sexually abuse her again[,]" and Child 3, although denying further abuse, reported that "her private parts had been hurting since R's return[.]" Despite the confusion, we think that the simple act of bringing R back into the home was sufficient to substantiate a finding that the children were CINAs and subsequently denying custody to Mother at disposition.

26

First, Mother argues that, for the same factual assertions and legal arguments she advanced in support of retaining custody of Child 1 and Child 2, she is also able and willing to care for Child 3. Second, Mother thinks it is in Child 3's best interest to remain in her custody. However, Mother's sole argument in support of this contention is that by retaining custody of Child 3, Child 3 would be able to maintain the "strong bond" between Child 3 and her siblings, Child 1 and Child 2, by having "all three children remain under the same roof." As we concluded in the section above, the juvenile court was within its discretion to grant custody of Child 1 and Child 2 to the Department, thus undercutting Mother's only argument as to why Child 3 should remain in her custody.

And for the same reasons delineated above, we likewise conclude that it was not an abuse of discretion for the juvenile court to award custody of Child 3 to her father because the juvenile court, as excerpted above, explained that by violating the safety plan, Mother placed Child 3 in an "abusive situation[,]" and it would be "contrary to the child's welfare" to return her to Mother's custody.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**